# Commonwealth *v*. Rogo, Appellant.

*Criminal law—Perjury—Evidence—Collateral matter—Record of former conviction.*

1. Testimony may be material, and properly assigned for perjury, either where it tends to directly prove or disprove one side or the other in the main issue, or where under the established rules of evidence it indirectly tends to do so by crediting or discrediting

other evidence or the testimony of another witness. In some cases the materiality may be determined by reference to the pleadings without regard to the testimony, in others, the testimony given being upon some secondary issue of fact arising on the trial of the case, its materiality can only be determined by an examination of the other testimony which it is intended to corroborate or contradict.

2. On a prosecution for perjury, where it appears that the prisoner swore, in a prior criminal proceeding, that the victim of a shooting affray had made a certain statement which was admitted in evidence as a dying declaration, it is proper to inquire into the actual facts to which the alleged statement refers, and the testimony of eye-witnesses to the shooting is admissible.

3. On the trial of an indictment for perjury it is not necessary that the prosecution should make out a case by the testimony of two witnesses; all that is required is the direct testimony of one witness and corroborating circumstances.

Argued March 6, 1918. Appeal, No. 28, March T., 1918, by defendant, from judgment of Q. S. Lackawanna Co., Jan. Sess., 1917, No. 208, on a verdict of guilty in case of Commonwealth v. Omerigo Rogo. Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREX-LER and WILLIAMS, JJ. Affirmed.

Indictment for perjury. Before BARBER, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

The appellant's statement of questions involved was as follows:

"1. Evidence: In a charge of perjury, arising out of testimony given in a murder trial as to a conversation had with the deceased, is the testimony of eye-witnesses to the killing competent, relevant or material, when the alleged perjured testimony is in no way connected with the killing?

"2. Evidence: Is it competent to read the testimony of the defendant in a murder trial, upon the trial of an-

109, (1919).]    Statement of Facts—Arguments.

other defendant upon a charge of perjury, arising out of testimony given upon the murder trial?

"3. Evidence: Trial of perjury two witnesses are sworn on behalf of the Commonwealth, whose testimony in chief would tend to prove the defendant guilty of the perjury as charged; but the cross-examination greatly weakens the testimony, in that both witnesses refuse to swear positively to the falsity of the statement urged as a basis of perjury, and both witnesses admitted that the defendant might have been truthful. Are such witnesses (two witnesses) within the law to sustain perjury?

"4. Charge of the court inadequate."

*Errors assigned* were various rulings and instructions sufficiently set forth in the opinion of the Superior Court.

*John Memolo,* for appellant.—Commonwealth did not produce sufficient testimony to warrant a conviction of perjury: Williams v. Commonwealth of Pa., 91 Pa. 493; Commonwealth of Pa. v. Decost, 35 Pa. Superior Ct. 88; Commonwealth of Pa. v. Bobanic, 62 Pa. Superior Ct. 40; U. S. v. Hall, 44 Fed. Rep. 864; Hashagen v. U. S., 169 Fed. Rep. 396; Cook v. U. S., 26 App. Cases (D. C.) 427; 30 Cyc. 1453, citing People v. Chadwick, 4 Col. App. 63, S. C. 87 Pac. 384; Allen v. U. S., 184 Fed. Rep. 668; Gandy v. State, 27 Neb. 707, S. C. 43 N. W. Rep. 749; Cook v. U. S. 26 App. Cases, (D. C.) 427, S. C. 6 Amer. & Eng. An. Ca. 810; Underhill on Criminal Evidence, Para. 93, page 170; Kehoe v. Commonwealth, 85 Pa. 127; Young v. Commonwealth, 28 Pa. 501.

The testimony of the witnesses at the former trial was inadmissible: Saucier v. State, 95 Miss. 226; S. C. 48 So. 840, S. C. 21 Am. & E. An. Ca. 1155; Calloway v. State, 29 Ind. 442; State v. Justesen Sup. Ct. of Wyo. 99 Pac. 456.

*George W. Maxey,* District Attorney. The testimony of eye-witnesses was a part of the res gestai: Common-

wealth v. Gentry, 5 District Reports, 703 (711) ; Gallo-
way v. State, 29 Ind. 442; Heflin v. State, Ga., 14 S. E.
112; Eighmey v. People, 79 N. Y. 546; 30 Cyc. 1452-
1453; People v. Charwick, 87 Pac. 384, 387; People v.
Green, 54 Cal. 592; People v. Barrett, 63 Cal. 62; Peo-
ple v. Welles, 103 Cal. 631, S. C. 37 Pac. 529; People v.
Porter, 104 Cal. 415, S. C. 38 Pac. 88.

OPINION BY PORTER, J., February 28, 1919:

The appellant was convicted in the court below of per-
jury, charged to have been committed at the trial, in the
Court of Oyer and Terminer of Lackawanna County, of
one Anthony Malinaro for the murder of Alfred Viola
also known as Jim Malvase. The alleged perjury con-
sisted of the testimony of the appellant that he had a
conversation with Viola, the deceased, shortly after the
latter had been wounded and was in a buggy in front of
Rizzo's hotel, that appellant, addressing the wounded
man, said "What is the matter with you, Jim?" and that
Viola replied, using a vile epithet, "He shoot me with
my own arm."

Testimony may be material, and properly assigned
for perjury, either where it tends to directly prove or
disprove one side or the other in the main issue, or where
under the established rules of evidence it indirectly
tends to do so by crediting or discrediting other evidence
or the testimony of another witness. In some cases the
materiality may be determined by reference to the plead-
ings without regard to the testimony, in others, the testi-
mony given being upon some secondary issue of fact aris-
ing on the trial in the case, its materiality can only be
determined by an examination of the other testimony
which it is intended to corroborate or contradict: Com-
monwealth v. Stern, 58 Pa. Superior Ct. 591; Common-
wealth v. Bobanic, 62 Pa. Superior Ct. 40. Malinaro
was upon trial for murder. He entered the general plea
of not guilty, but under that plea the mere question of
whether he had killed Viola was not necessarily the only

one involved.  He was free to present any competent evidence tending to rebut the presumption of malice arising from the use of a deadly weapon, or he might show that he had killed Viola in self-defense.  The defense which he presented was that Viola had attacked him with a knife, that he (Malinaro), caught the wrist of the hand which held the knife, that Viola thereupon threw him upon the ground and that he (Malinaro) with his other hand reached around and took a pistol from Viola's hip pocket, that Viola attempted to recover possession of the pistol which was discharged in the struggle and that the mortal wound was thus inflicted upon Viola.  The Commonwealth had produced several witnesses who testified that there was no struggle between the men, that they were standing a few feet apart, that Malinaro's right hand was in his own coat pocket and that from a pistol in that pocket he fired the shot which mortally wounded Viola.  It was proper for the court to consider this evidence in order to ascertain the issues really presented at the murder trial and determine the materiality of the testimony there given by this appellant.  The fact that the testimony of Malinaro was read in the presence of the jury did this appellant no harm, it did not tend in any manner to contradict the testimony of this appellant either at the trial of Malinaro or at his own trial, from the result of which he now appeals.  This disposes of the second question which the appellant's counsel assert is here involved.

The first question which the learned counsel for the appellant states to be involved in this case is the relevancy of the testimony of eyewitnesses to the killing of Viola by Malinaro upon the trial of this appellant for perjury.  The conversation with Viola to which this appellant testified at the murder trial was by him alleged to have occurred very shortly after Viola had received his mortal wound, it was admissible for the reason that it was of the res gestæ and for the additional reason that the testimony of this appellant disclosed that Viola then

believed that his wound was a mortal one and that he was in the presence of death. Dying declarations by the victim of an assault, as to the manner in which he received his injuries, are by the law accepted as evidence for the reason that human experience teaches us that he will then speak the truth. The testimony at the trial of Malinaro for murder, as well as that of this appellant for perjury, clearly indicated, that, at the time of the alleged conversation, Viola believed that he was dying. There thus arose the probability that he would speak the truth, upon which assumption the admission of the declaration in evidence is founded. It seems to logically follow that when the question is whether a man has, or has not, in these circumstances, made a given statement, it is relevant to inquire what were the actual facts in the transaction to which the alleged statement refers. Was it probable or improbable that the deceased made any such statement? It is never irrelevant to give in evidence any circumstance which tends to make the proposition at issue more or less probable: Johnson v. Commonwealth, 115 Pa. 370; Eighmy v. People, 79 N. Y. 546; Stephen's Digest of Law of Evidence, Chap. 1, Art. I. We are of opinion that the evidence in question was properly admitted.

Careful examination of the testimony has led us to the conclusion that it was sufficient to sustain the conviction. The appellant had testified that the buggy was standing in the street in front of Rizzo's hotel. The testimony of Thomas McCue, who testified that he stopped the buggy, in which John Davis had the wounded man and took the wounded man from the buggy and placed him in an automobile, would have warranted a finding that the wounded man had no conversation with anybody after the buggy stopped, he testified positively that such a thing could not have occurred, that the wounded man was moaning and spoke to no person. It is true that he said there were a number of men around the buggy as it was approaching him, and that he could not say what

had then occurred, but his testimony was positive that the wounded man spoke to no person after the buggy stopped. John Davis testified that he took Viola in his buggy from the place where the shooting occurred along Oak street until he met McCue who took Viola from the buggy and put him in the automobile, that he did not hear any such conversation as that testified to by this appellant, nor did he there see this appellant, that he believed he would have heard any such conversation had it occurred. It is true that upon cross-examination he did say that the appellant might have been there, although he did not remember to have seen him there. He said "I think I would have heard it I was pretty close to him (Viola), I can't tell for sure, I couldn't swear to it." There is no doubt whatever that John Davis was sitting beside Viola in the buggy at the time the appellant alleges that he had the conversation with the wounded man. We thus have McCue positively testifying that the conversation could not have occurred after the buggy stopped, and Davis testifying that he did not hear the conversation, that he believes he would have heard it if it had occurred, but saying that he is unwilling to swear that it could not possibly have occurred. "It is the general rule that the testimony of a single witness to the falsity of the matter on which the perjury is assigned, is insufficient to convict on a charge of perjury. Two witnesses are not essentially requisite, for if any material circumstance be proved by other witnesses in confirmation of the testimony of the witness who gives the direct testimony of perjury, it may turn the scale and warrant a conviction": Williams v. Commonwealth, 91 Pa. 493. We have in this case the positive testimony of McCue that the alleged conversation could not have occurred, the corroborating testimony of Davis that he was sitting beside Viola, that he did not hear the conversation and that he believes he would have heard it if it had occurred. We have in addition to this the testimony of Thomas Reese, who was county detective, that

prior to the arrest of Malinaro, he had a talk with this appellant about the case, and the latter told him that he knew nothing about it, saying, "No, I know nothing about the case at all." This conversation occurred about two months after the killing of Viola. The appellant admitted that he had never said anything about the alleged conversation with Viola until after he had had an interview with Malinaro, in the jail, many months later. We have in addition to this corroborating evidence the improbability that a man who thought he was dying would make a declaration against his own interests, which by the overwhelming testimony of disinterested witnesses, is shown to have been contrary to the facts. These considerations lead us to the conclusion that the third question alleged to be involved must be determined adversely to the contention of the appellant.

The charge of the court fairly presented to the consideration of the jury the questions upon which they were required to pass, the principles of law were correctly stated and the references to the testimony were free from bias. The suggestion that the charge was inadequate is not well founded.

The judgment is affirmed and it is ordered that the appellant appear in the court below at such time as he may be there called and that he be committed until he has complied with the sentence or any part thereof that was not performed at the time this appeal was made a supersedeas.