## Commonwealth *v.* Rossi, Appellant.

Argued November 21, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*W. Bradley Ward*, with him *Lemuel B. Schofield*, for appellant.

*John M. Kurtz, Jr.*, District Attorney, for appellee.

OPINION BY HIRT, J., January 17, 1952:

This is the appeal of the defendant, Vincent Rossi, from judgment of sentence on his conviction of subornation of perjury. On the testimony of Ernest Twyman, a numbers writer, a true bill had been found

by a grand jury charging him with setting up and conducting a lottery. On the trial of Rossi in quarter sessions, on that charge, Twyman, a Commonwealth witness, changed his testimony with the result that Rossi was discharged for lack of evidence. On the proofs in the present case that Rossi induced Twyman to commit perjury in the trial of the lottery charge, Rossi was convicted of subornation. It is contended that the evidence is insufficient to establish either that Twyman committed perjury or that perjury was suborned by the defendant.

Twyman was a numbers writer in and about Coatesville. In the present trial he testified that it was Rossi who conducted the lottery and that he wrote numbers exclusively for him. Rossi lived in Reading but also maintained an apartment in Coatesville. There is evidence that he was the proprietor of a cigar store on North Second Avenue in Coatesville; this he denied contending that the store was operated by his son. But the evidence clearly charges him with some dominion over the premises. Twyman testified that during August 1949 he had delivered numbers slips and the proceeds in money to Rossi at the cigar store every day for about a week but the arrangement was then terminated and Rossi notified him that thereafter he would pick them up at Twyman's home. Early in the afternoon of August 17, 1949, Rossi was seen by four State Police officers, alone in his automobile, parked in front of Twyman's house on the easterly edge of the City of Coatesville. As the officers approached they saw Twyman standing beside the driver's seat leaning against the car and talking to Rossi. One of them observed Twyman holding something in his hand. The officers ordered Rossi to remain in his automobile while all four of them went into Twyman's house and searched the premises. There the officers found slips,

tickets, charts and other paraphernalia connecting Twyman with the conduct of a numbers lottery. About one-half hour later the officers left Twyman's house and then directed Rossi to drive his car to the State Police barracks. There they searched the car but found nothing tangible to indicate that Rossi was in the numbers racket. Twyman later pleaded guilty to a charge of traffic in lottery tickets in violation of §602 of The Penal Code of June 24, 1939, P. L. 872, as amended, 18 PS §4602.

Whether Twyman committed perjury as a Commonwealth witness in the trial of Rossi on the lottery charge, depends upon the truth of the following incident, as related by him under oath in the present trial. He testified that Rossi came to his home on the above occasion of August 17, 1949, to pick up the returns of the numbers written by him on that day; that he had a paper bag in his hand for delivery to Rossi, containing numbers slips and money, and was standing at the curb alongside of Rossi's car talking to him; that at the approach of the police officers he "got rid of the bag quick" and dropped it with its contents into Rossi's car. He was positive in his statement under oath to that effect. Perjury is alleged to have been committed by him when he testified, as a witness in the prior trial of Rossi on the lottery charge, that he never had any dealings "with him relating to numbers" and that he "never turned numbers slips to Vincent Rossi". In emphasizing the importance of determining the truth of the above incident, the trial judge, in all fairness to the defendant, charged the jury:". . . to establish the falsity of Twyman's testimony on October 6, [1949, the date of Rossi's trial on the lottery charge] the Commonwealth must establish that Twyman in fact did deliver number slips to Rossi on August 17, 1949. If that is not done, if that is not a fact, if no such delivery was

made by Twyman to Rossi in August,1949, if no numbers slips were delivered to Rossi on August 17, 1949, then the testimony of Twyman on October 6 was not false and there was no perjury and that would be an end of the case so far as the Commonwealth's contention is concerned".

The extent of the burden on the Commonwealth in proving the perjury is succinctly stated in *Commonwealth v. Antico et al.*, 146 Pa. Superior Ct. 293, 319, 22 A. 2d 204, thus: "The rule is well established in this Commonwealth that upon a charge of perjury it is unnecessary for the prosecution to make out a case by the testimony of *two* witnesses; all that is required is the direct testimony of one witness and 'strong circumstances conducing to that end' (Steinman v. McWilliams, 6 Pa. 170, 177), or 'corroborative evidence' (Com. v. DeCost, 35 Pa. Superior Ct. 88, 95; Com. v. Rogo, 71 Pa. Superior Ct. 109; Com. v. Haines, 130 Pa. Superior Ct. 196, 196 A. 621), or 'substantial corroborating circumstances' (Com. v. Bobanic, 62 Pa. Superior Ct. 40, 45), or 'any material circumstance . . . proved by other witnesses in confirmation' (Williams v. Com., 91 Pa. 493, 501)." In *Commonwealth v. Billingsley*, 160 Pa. Superior Ct. 140, 143, 50 A. 2d 703[1], Judge ARNOLD, speaking for this court, said: ". . . the *crime* of perjury has a number of elements: (a) An oath to tell the truth must be taken by the accused, and (b) administered by legal authority, (c) in a judicial proceeding (or statutory affidavit). (d) The accused must have testified in such proceeding, and (e) his testimony must be material to the judicial proceeding. (f) The testimony assigned as perjury must be false, and (g) must be given wilfully, and corruptly, and with knowledge of its falsity (or given recklessly), and for the purpose

---

[1] Affirmed in 357 Pa. 378, 54 A. 2d 705.

of having it believed. As to none of these elements is there a requirement as to the quantity of proof *except* as to the falsity of the testimony, i.e., the assignment of perjury. As to the falsity and as to it alone, is there a rule that conviction may not be had upon the testimony of one witness."

Twyman clearly was a competent witness to testify to his own perjury. *Commonwealth v. Billingsley,* supra; *Hammer v. United States,* 271 U. S. 620, 46 S. Ct. 603. He then had not yet been convicted of perjury and therefore was not disqualified as one sentenced for the offense.

Twyman as a Commonwealth witness testified in the trial of the present case that he was arrested on August 17, 1949, the day of the search of his home by the State Police and that he was not released on bail until three days later; that he then saw Rossi "at his store" on Second Avenue and told him that he had given a statement to the police, inferentially implicating Rossi; that Rossi said: "That statement would have to be changed that I gave the police" and that "I could say that the police pushed me around and I talked" and further that "I could have told the police . . . that he [Rossi] was there getting his car washed". Twyman also testified that some time later when Rossi came to his house at 42 Carver Court to inquire as to what occurred before the grand jury Twyman replied "I told the grand jury who I was turning money and slips in to" and that Rossi said: "I should not have done it, I should have come and seen him first"; that Rossi appeared again the following morning and took Twyman to Rossi's lawyer saying that he would pay the charges for his acting for Twyman if he would discharge counsel he had previously retained. Twyman testified further that on October 5, 1949, Rossi called for Twyman at his house and took him in his car to the court house

at West Chester where Rossi was to appear for trial on the lottery charge. Twyman testified also that Rossi told him a number of times not to admit writing numbers and, as to the books and other lottery material taken by the police from his house, to say that his children found them and brought them into the house. It is admitted that Rossi conveyed Twyman back to his house the afternoon of October 5th and called for him there the following morning and took him to the Court House. Twyman testified that on the way Rossi again told him "not to admit anything, and he said if I told who I turned the money and stuff in to it was my word against his". Twyman said that admonitions to this effect were repeated up to the opening of the trial of Rossi on the lottery charge in the afternoon of October 6th. At that trial Twyman testified that he had *not* "turned slips into Vincent Rossi" and when asked in the trial of the present case why he had testified falsely he replied: "Because I know in the business I was in I would be called a rat or a squealer, and I would be scared not to do what he said. He kept telling me what to say and what not to say".

By way of corroboration of Twyman's testimony that he had delivered numbers slips and money to Rossi on August 17, 1949, and that his statement under oath to the contrary, at Rossi's previous trial, was perjured, the Commonwealth relied upon the following circumstances: that Rossi had driven his car to the house of Twyman, a negro, on the edge of Coatesville in Carver Court, in a district largely inhabited by negroes, for a meeting between them; that in view of the racial difference and the admitted absence of personal friendship between them it was highly unlikely that the purpose of Rossi's visit was unrelated to Twyman's only business, that of numbers writing; that Twyman was seen to have something in his hand as he stood beside Rossi's

car talking to him and that in all probability it was a bag of numbers as claimed by Twyman since at that very time Twyman's house contained a large quantity of numbers slips and other paraphernalia indicative of an essential phase of a numbers lottery in active operation. The fact that the bag was not found in Rossi's possession is understandable. All four officers went into Twyman's house to execute the search warrant and they all remained there for at least one-half an hour. In the meantime Rossi, alone in his car and unobserved, had ample opportunity to dispose of the bag and its contents together with any other incriminating evidence on his person or in the automobile.

In Wigmore on Evidence, Vol. VII, §2042, it is authoritatively stated: "(2) As to the *nature of the corroboration,* no detailed rule seems to have been laid down, nor ought to be laid down. The jury should be instructed not to convict unless the testimony of the principal witness has been so corroborated that they believe it to be true beyond a reasonable doubt." Insofar as the corroboration is purely circumstantial the required proof is beyond a reasonable doubt merely and not that the circumstances be absolutely incompatible with the defendant's innocence. The authorities reflecting the changed rule in Pennsylvania are cited in *Commonwealth v. Grosso,* 169 Pa. Superior Ct. 606, 84 A. 2d 239. Section 2042 of Wigmore, supra, contains the following additional discussion: "(3) . . . the corroboration is required for the perjured fact as a whole, and not to every detail or constituent part of it." Cf. *Com. v. Bobanic,* supra. This phase of the case was adequately submitted to the jury. There is corroboration of Twyman's direct testimony of the perjury in the above circumstances, sufficient to satisfy the requirements of the law as to the nature and degree of the proof required.

The two witness rule, or one witness with corroborating circumstances, however, has not been extended in this State to the proofs in prosecutions for subornation of perjury. Wigmore in §2042, supra, refers to the principle thus: "(5.) The rule should not apply necessarily to a charge of *subornation of perjury,* because the act of subornation does not involve the theory of oath against oath, and the perjury may be evidenced by the perjured witness himself, whose present testimony is thus not opposed to the testimony for the prosecution." As to a suborner there is no good reason for requiring corroborations of the direct testimony of one witness as essential to a conviction of the charge. In the *Billingsley* case, supra, we categorically held that proof by more than one witness is not required to establish that an accused induced or persuaded the suborned witness to commit the crime of perjury.

Although not essential to proof of the crime, there is abundant corroboration of Twyman in the circumstances, as to the subornation of perjury by Rossi. The Commonwealth established that Twyman and Rossi were seen in furtive conversation in the Court House a number of times, the last of which was on October 6th immediately before Rossi's trial. From the fact that Rossi kept in such close contact with Twyman shortly before and during Rossi's trial, where he was exculpated by Twyman's testimony, it was a fair inference that Rossi's sole motive was to keep Twyman under control and hold him in line. This conclusion is all the more reasonable from the absence of testimony that Rossi ever associated with Twyman on any other occasion.

When Twyman appeared as a witness before the grand jury he was sworn by the district attorney, and not by the foreman or by a member of the grand jury

in accordance with §10 of the Act of March 31, 1860, P. L. 427, 19 PS §731. Although that fact well might have been urged as a reason for quashing the indictment, as in *Commonwealth v. Hubbs (No. 1)*, 137 Pa. Superior Ct. 229, 8 A. 2d 611, yet we are not concerned with it here. In the present case the Commonwealth did not base the charge of subornation on the inconsistencies in the testimony of Twyman before the grand jury as compared with his testimony in the trial of Rossi on the lottery charge. Cf. *Commonwealth v. Sumrak*, 148 Pa. Superior Ct. 412, 25 A. 2d 605. What we are concerned with is the testimony of Twyman in that trial of Rossi, where he admittedly was properly sworn as a witness upon legal authority, and Twyman's admission under oath in the present case that he perjured himself in the prior trial. The procedure before the grand jury has no bearing on the issues of law controlling the present appeal.

And finally, the contention of the defendant that he was prejudiced by the statement of the trial judge in his charge that Twyman was a "self-admitted perjurer" is wholly without merit. The label had already been put upon Twyman by Rossi's counsel when on cross-examining Twyman he asked: "You realize that you admitted that you are a perjurer?" to which Twyman answered: "Yes, I do." Moreover the court by merely calling the jury's attention to the above admission of Twyman did not in any way infringe upon the prerogative of the jury to find the facts. The charge as a whole adequately instructed the jury as to the degree of proof necessary to establish perjury and fairly left to the jury the question whether Twyman in fact had perjured himself when he testified in the trial of Rossi on the lottery charge as well as whether his perjury was suborned.

There is no merit in any of the contentions of the appellant in seeking a new trial.

Judgment of sentence affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal was made a supersedeas.