## Commonwealth *v.* Gore, Appellant.

Argued April 16, 1952. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*L. B. Schofield*, with him *Stanley F. Mankus, Harry J. J. Bellwoar, Jr.,* and *Bellwoar & Rich,* for appellant.

10

*Isaiah W. Crippins,* Assistant District Attorney, with him *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY RHODES, P. J., July 17, 1952:

Defendant, Lester E. Gore, having been found guilty by a jury, has appealed from conviction and sentence on a charge of perjury in the Court of Quarter Sessions of Philadelphia County. His motion for a new trial was denied, and he was sentenced to the Eastern State Penitentiary for a term of not less than one year nor more than three years.

The evidence presented by the Commonwealth established that defendant, a building inspector and secretary of the Zoning Board of Adjustment of the City of Philadelphia, testified under oath before the Special Grand Jury of March, 1950, which had been instructed to investigate charges of extortion and related crimes in any city department or bureau granting licenses, permits, or approvals, as follows:

"Question: Now, as a building inspector or ward leader or secretary of the Zoning Board of Adjustment, did you ever receive or demand any money from anyone in connection with the obtaining of a building permit, a zoning permit, a use permit, or any other matters that would come before the Zoning Board of Adjustment?

"Answer: I did not.

"Question: Or that in any way affects zoning?

"Answer: No."

The bill of indictment upon which defendant was tried recited, in substance and effect, defendant's testimony before the grand jury as constituting perjury. The indictment thereupon continued: "Whereas in Truth and in Fact, he, the said Lester E. Gore, as he then and there well knew, did, as a building inspector,

or ward leader or Secretary of the Zoning Board of Adjustment of the City of Philadelphia receive or demand money from divers persons in connection with the obtaining of a building permit, zoning permit, use permit, or any other matter which would come before the Zoning Board of Adjustment of the City of Philadelphia, or which in any way would affect zoning, to wit:" The indictment then set forth six transactions forming the evidentiary basis of the assignment of perjury.

The Commonwealth's witnesses showed that on these six different occasions defendant unlawfully demanded and received substantial sums of money for the issuance of building permits and certificates of zoning variances relating to six separate properties in the City of Philadelphia.

One builder, Max Haupt, testified that on three occasions he paid defendant $200, $50, and $100, respectively, for permits in connection with three properties in the City. There was testimony that defendant demanded these payments or refrained from issuing permits until such payments were made. Owners of these properties, or their agents, reimbursed Haupt in the exact amount of the payments made to defendant.

Carl J. Mayer, another builder, testified that he made an application for a variance, and that after five weeks' delay he was granted a certificate after he gave $100 in cash, in a sealed envelope, to one Walter Weingartner, an employe of the City who worked in the same office with defendant, for delivery to defendant. Weingartner testified that he received the envelope from Mayer and that he delivered it to defendant.

James G. Durham, an architect, testified that he was refused a permit for alterations to the Woodbine Club at 1336 North 12th Street, Philadelphia, and that thereafter defendant told him it would require $100 to

get it through the Zoning Board. Marvin R. Pole, vice-president of the club, testified that he placed $100 on a desk in defendant's office, and that defendant came in the office while the witness was standing at this desk. Subsequently the approval was granted.

John McDevitt testified that he appealed to the Zoning Board of Adjustment to obtain a construction permit for a storage warehouse at 6108 North 21st Street, Philadelphia, to be erected for Lix Van & Storage Company; that defendant told him the permit would cost $125; that he offered a sealed envelope with defendant's name on it containing $125 to defendant who told him to give it to Mr. Weingartner. Weingartner testified that he heard defendant tell McDevitt to give the envelope to him (Weingartner); that he received the envelope from McDevitt; and that he gave it to defendant. The permit for the club was granted.

There was additional testimony supporting the Commonwealth's case, including the testimony of Weingartner that defendant had called him on the telephone and told him that if he testified before the grand jury as to the illegal payments he would incriminate himself. The Commonwealth also established the authority of defendant to withhold permits as secretary of the Board of Adjustment.

Defendant predicates his argument upon the general rule that to sustain a conviction of perjury the Commonwealth must offer either two witnesses to the falsity of the matter on which the perjury is assigned or one witness and corroboration. *Com. v. Sumrak,* 148 Pa. Superior Ct. 412, 414, 25 A. 2d 605. Referring to this rule, we said in *Com. v. Antico,* 146 Pa. Superior Ct. 293, 319, 22 A. 2d 204, 217: ". . . all that is required is the direct testimony of one witness and 'strong circumstances conducing to that end' (Steinman v. McWilliams, 6 Pa. 170, 177), or 'corroborative

evidence' (Com. v. DeCost, 35 Pa. Superior Ct. 88, 95; Com. v. Rogo, 71 Pa. Superior Ct. 109; Com. v. Haines, 130 Pa. Superior Ct. 196, 196 A. 621), or 'substantial corroborating circumstances' (Com. v. Bobanic, 62 Pa. Superior Ct. 40, 45), or 'any material circumstance . . . proved by other witnesses in confirmation' (Williams v. Com., 91 Pa. 493, 501)." See, also, *Com. v. Rossi*, 170 Pa. Superior Ct. 292, 85 A. 2d 598; *Com. v. Grosso*, 169 Pa. Superior Ct. 606, 84 A. 2d 239.

On this appeal the principal contention of defendant is that the proof of perjury was insufficient to sustain the verdict. It is argued that the general rule must be separately applied, and that each of the six payments to defendant must be established directly and independently of the other five by the testimony of two witnesses or one witness and corroborating circumstances. It is further argued in his brief that if there was corroboration as to some payments but not as to others it was the duty of the trial judge to withdraw from the consideration of the jury those transactions as to which there was no corroboration.

We think the present appeal is controlled by our recent decision in *Com. v. Schindler* (allocatur refused), 170 Pa. Superior Ct. 337, 86 A. 2d 151. There the single assignment of perjury was that defendant, in testifying under oath before a grand jury, swore falsely that he was never in a room, where horse race bets were placed, on the second floor of a certain building in Pittsburgh. Defendant disclaimed knowledge of any operation at that place, and testified, inter alia, "I was never up there." In that case, the Commonwealth proved the falsity of the defendant's statement under oath by the testimony of two witnesses, each of whom testified that he, independently, and not on the same occasion, saw the defendant in the room in question. Defendant there, as here, contended that the

two witnesses must corroborate each other, and that, because the witnesses did not testify that they saw defendant in the "horse room" at the same time, the conviction could not stand. We said, page 342 of 170 Pa. Superior Ct., page 153 of 86 A. 2d: "There is no such rule of law. The rule has been stated and applied time and again, and it requires that the Commonwealth prove the falsity of a defendant's testimony by two witnesses or by one witness and corroborating circumstances. Beyond that the rule requires nothing. If appellant had sworn that he was not in the 'horse room' on a day certain the Commonwealth would have been obliged to show by two witnesses or one witness and corroborating circumstances that he had been there on that day, but even so, it would not have been required to show that the witnesses saw him at the same time of that day. So, having sworn that he was *never* there, the Commonwealth amply proved its case by showing that he was there many times."

In the present case, as in the *Schindler* case, there was only one assignment or charge of perjury, and the falsity of the statement under oath was established by the testimony of more than two witnesses who testified concerning six specific transactions. The corroboration required is as to the crucial fact of the falsity of the statement of defendant under oath. Testimony of various witnesses as to different acts of extortion, while not mutually corroborative of the fact of a particular payment, was corroborative of the fundamental fact that defendant swore falsely when he testified he never received payments from anyone.[1] *Reg. v. Hare*

---

[1] In at least one instance, under defendant's interpretation of the general rule, Commonwealth's evidence was sufficient. This was the transaction involving the property at 6108 North 21st Street, concerning which the witness John McDevitt testified, and where corroborative evidence was given by the witness Weingartner.

*(1876)*, 13 Cox's Criminal Cases 174; *United States v. Palese*, 3 Cir., 133 F. 2d 600, 602, 603; *United States v. Seavey*, 3 Cir., 180 F. 2d 837, 839.

The Commonwealth proved that defendant was a perjurer by the testimony of more than two witnesses. Our holding in the present appeal is not inconsistent with the language of the Supreme Court in *Williams v. Com.*, 91 Pa. 493, upon which defendant relies. The Supreme Court there stated, pages 501, 502: "The weight of authority and the general rule require that where an indictment contains several assignments of perjury, in order to convict on any one, there must be either two witnesses or one witness, and corroborative evidence to negative the truth of the matter in such assignment. . . . the Commonwealth is required to prove by two witnesses or one witness, and corroborative evidence, *at least one* corrupt payment, . . . which the defendant is charged with having made or paid; and, though each of several of such acts be proved by a single witness, if *none* be proved by two witnesses or by one witness, and corroborative proof of circumstances, there could not be a conviction." [Italics supplied.] Judge RENO, commenting on *Williams v. Com.*, made this perspicuous statement in the *Schindler* case (page 342 of 170 Pa. Superior Ct., page 153 of 86 A. 2d): "That case teaches that where an indictment for perjury assigns *several* corrupt practices *each* separate act or statement must be proven by two witnesses or one witness with corroborative circumstances. That rule is not applicable where, as here, a defendant is charged with *one* false statement and its falsity is proven by two witnesses." As in the *Schindler* case, defendant was charged with one false statement. The six transactions supporting the assignment of perjury did not constitute six assignments of perjury. They provided particularity that might have been obtained by a bill of particulars.

At the oral argument before this Court, counsel for defendant did not discuss any of the questions to which reference was made in his brief other than the sufficiency of the evidence to sustain the verdict. These matters were not specifically withdrawn, and they have been considered. We find no merit in any of them.

The trial judge charged the jury correctly and at length as to the necessity of establishing the fact of perjury by more than one witness, or by one witness and corroborative evidence. *Com. v. Antico*, supra, 146 Pa. Superior Ct. 293, 319, 22 A. 2d 204. It was sufficient to establish perjury if there were two witnesses, or one witness and corroboration, as to one payment. Instructions on this point were correct, and the case was properly submitted to the jury as to the six transactions involving payments to defendant.

Defendant presented a petition to the court below seeking a change of venue and alleging that he could not obtain a fair trial in Philadelphia County due to adverse publicity. The Commonwealth filed an answer, and after argument the court in banc refused the petition for change of venue. Defendant's petition to the Supreme Court of Pennsylvania for change of venue was subsequently refused. So far as the record discloses the alleged adverse publicity was factual, and there is nothing on the record to show that defendant did not, or could not, receive a fair trial. The grant or refusal of a petition for change of venue is largely a matter within the sound discretion of the trial court. *Com. v. Spallone*, 154 Pa. Superior Ct. 282, 287, 35 A. 2d 727; *Com. v. Shadduck*, 168 Pa. Superior Ct. 376, 380, 77 A. 2d 673; *Com. v. Simmons*, 361 Pa. 391, 397, 65 A. 2d 353.

Before defendant took the stand in his own behalf his counsel offered to prove by an inspector of police and a detective sergeant that police officers had in-

vestigated defendant as to his bank balance and net worth in 1947, as a result of complaints about payments charged for permits, and that the investigation produced no evidence of wrongdoing. This testimony was clearly inadmissible on at least two grounds. It was an attempt to introduce opinion evidence on an issue as to which opinion evidence was not admissible (cf. *Graham v. Pennsylvania Company*, 139 Pa. 149, 159, 21 A. 151), and it was not material in any event. Defendant was permitted to testify as to his net worth, and he explained that the large bank balances in his personal account during his term of office represented funds used in his father's construction business.

Finally it is claimed that the use of the words "ward leader" in the indictment and at the trial created prejudice and deprived defendant of a fair trial. According to the Commonwealth's evidence defendant swore falsely under oath; and the use of the words "ward leader" was not material to the charge or necessary to sustain the conviction. Defendant answered the question containing these words in the negative, and he has no ground for complaint. The record does not disclose that the use of these words resulted in prejudice or prevented a fair trial in any respect. Certainly this Court cannot presume that prejudice did result.

We are of the opinion that defendant was fairly tried, and that the evidence is ample to sustain the conviction. In the absence of any reversible error, the judgment will be affirmed.

The judgment and sentence are affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.