Commonwealth *v.* Field, Appellant.

Argued September 19, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Donald J. Goldberg,* with him *Louis Lipschitz,* for appellant.

*James T. Ranney,* Assistant District Attorney, with him *Gilbert Stein,* Special Prosecutor, *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., December 11, 1972:

This is an appeal from defendant Field's conviction for perjury committed before a Philadelphia grand jury. The grand jury had been convened, in part, to investigate why Field had instituted a lawsuit against the Redevelopment Authority of Philadelphia on January 23, 1969, charging some of its members with an un-

lawful conflict of interest, and why he abruptly settled the suit 5 days later on terms not made public. Called as a witness before the grand jury on April 16, 1969, Field was questioned about any possible financial advantage that may have accrued either to himself[1] or to Citizens Bank, of which he was the chairman of the board of directors and principal shareholder, as a result of the settlement of the suit. Specifically, he was asked whether Citizens Bank was offered the position of "lead bank"[2] as an inducement to settle the suit. Field denied any connection between the settlement of the suit and negotiations regarding the new "lead bank" appointment. In fact, Field testified that the suit was settled on January 28, 1969, but it was not until March of 1969 that he first discussed with the Redevelopment Authority the possibility of having his bank designated the next "lead bank".[3]

---

[1] Field was a joint owner of property in an area marked for redevelopment pursuant to what is known as the 1500 Market Street project. The property jointly owned by Field was being leased to Citizens Bank for a branch office and was the subject matter of his suit against the Redevelopment Authority.

[2] The "lead bank" designation refers to the special position occupied by one of the several Philadelphia banks participating in the handling of the Redevelopment Authority funds. The "lead bank" is the bank into which the Authority's funds are initially deposited. It is entitled to retain 5% of the funds on deposit, and shares the remaining 95% with the other participating banks, including itself, according to a formula based upon the banks' relative amounts of capital and surplus, but with no bank receiving less than 2%. At the time Field's lawsuit was filed the position of "lead bank" was being rotated, at 18-month intervals, among seven Philadelphia banks not including Citizens Bank. As of January 1, 1968, each of the participating banks had already occupied the position of "lead bank" and a new rotation among them had begun.

[3] Citizens Bank and another bank were subsequently permitted to enter the "lead bank" rotation with their turns at being "lead bank" to begin immediately upon the expiration of the current "lead bank's" turn on June 30, 1969. However, the Redevelopment

As a result of the testimony heard by the investigating grand jury, a presentment was returned recommending, *inter alia,* that Field be indicted for perjury committed before it on April 16, 1969. The court in charge of the investigating grand jury accepted the presentment and asked the district attorney to submit it for action to an indicting grand jury.[4] After considering the presentment, the indicting grand jury returned a single-count perjury indictment charging Field with five assignments of perjury.[5] A trial ensued following which Field was found guilty by a jury and sentenced to pay a fine of $3,000 and to undergo imprisonment for not less than 2½ nor more than 7 years.

On this direct appeal Field's principal contention is that the lower court improperly overruled his demurrers to the Commonwealth's evidence supporting the five assignments of perjury. With respect to at least two of the assignments we agree, and, since we cannot now determine whether or not the jury's general verdict of guilty was based upon an assignment supported by legally sufficient evidence, we must remand for a new trial.

The five assignments of perjury listed in the indictment are that Field falsely stated before the grand jury (1) that his desire to obtain the Redevelopment Authority's "lead bank" designation for Citizens Bank had

Authority later rescinded this decision, placing Citizens Bank and the other new bank at the bottom of the current rotation instead of at the top.

[4] Field challenged then, and challenges now on appeal, the power of the prosecutor to submit an investigating grand jury presentment, with leave of court, directly to an indicting grand jury without affording him a preliminary hearing. However, this power was recently upheld, in a set of cases not involving perjury, by our Supreme Court in *Commonwealth v. McCloskey,* 443 Pa. 117, 277 A.2d 764, *cert. denied,* 404 U.S. 1000 (1971).

[5] The five assignments are set out in the text infra.

nothing to do with the termination of his lawsuit against the Redevlopment Authority, (2) that the said "lead bank" role for Citizens Bank had not been offered to him as an inducement to get him to settle his lawsuit, (3) that his first discussions about the "lead bank" took place more than a month after his lawsuit had terminated, (4) that there was no financial advantage in having the "lead bank" designation, and (5) that there was no financial advantage to himself in settlement of the lawsuit.

The first two assignments, which charge essentially the same thing, were not supported by legally sufficient evidence since the two-witness rule was not met. The two-witness rule, as it is applied in Pennsylvania, requires that the falsity element of a perjury conviction be supported either by the direct testimony of two witnesses or by the direct testimony of one witness plus corroborating evidence. *Commonwealth v. Russo,* 388 Pa. 462, 131 A.2d 83 (1957); *Williams v. Commonwealth,* 91 Pa. 493 (1880); *Commonwealth v. Gore,* 171 Pa. Superior Ct. 8, 90 A.2d 405, *allocatur refused,* 180 Pa. Superior Ct. xxxviii (1952); *Commonwealth v. Antico,* 146 Pa. Superior Ct. 293, 22 A.2d 204, *allocatur refused,* 150 Pa. Superior Ct. xxvii (1941); *Commonwealth v. Haines,* 130 Pa. Superior Ct. 196, 196 A. 621 (1938); 3 Laub, Pennsylvania Trial Guide §462 (1959). If an indictment contains several assignments of perjury, each must comply with the two-witness rule. *Williams v. Commonwealth,* 91 Pa. 493 (1880); *cf. Commonwealth v. Gore,* 171 Pa. Superior Ct. 8, 90 A.2d 405, *allocatur refused,* 180 Pa. Superior Ct. xxxviii (1952). In the present case no direct testimony was offered to show that the "lead bank" designation was an inducement or a condition for settling the lawsuit. The Honorable James H. J. Tate, then mayor of Philadelphia, testified that prior to institution of the suit

Field had demanded of him the "lead bank" designation. Mayor Tate's testimony may be regarded as suggesting a connection between Field's desire to obtain the "lead bank" designation and his *institution* of the suit, but it does not afford *direct* evidence of a connection between the "lead bank" designation and his *settling* of the suit. Additionally, officers of Citizens Bank and of the Redevelopment Authority presented testimony indicating that Field and his bank negotiated with the Authority regarding the "lead bank" designation within a week of settling the suit. This may be taken as indirect proof that an agreement about the "lead bank" designation was reached at settlement, but again it does not afford the requisite direct testimony. In fact, the prosecutor admitted at trial, in responding to Field's demurrer, that the Commonwealth's evidence supporting the first two assignments was circumstantial in nature. Nor does the Commonwealth argue on appeal that these assignments are supported by any direct testimony.[6] Consequently, we must conclude that the two-witness rule was not met with respect to the first two assignments, and accordingly Field's demurrer thereto should have been sustained.

We note additionally, though not necessary to the disposition of this appeal, that the other three assignments do not precisely recite Field's grand jury testimony,[7] thus raising the question of whether the vari-

---

[6] Instead, the Commonwealth asserts that the first two assignments, along with assignments 4 and 5, were sufficiently withdrawn from the jury's consideration so that compliance with the two-witness rule was unnecessary. The validity of this proposition is discussed infra.

[7] Assignment 3 charges Field with having testified that his first discussions about the "lead bank" took place more than a month after his lawsuit had terminated. His actual testimony was that his first discussion about the "lead bank" was with an employee of Girard Trust Bank. He never set a date on which this discus-

ance is sufficiently material to render the assignments defective. *See United States v. Laite,* 418 F.2d 576 (5th Cir. 1969).

Since at least two of the assignments were legally insufficient to go to the jury, and since we now are unable to determine, from the jury's general verdict, whether they based their decision on a sufficient or insufficient assignment, we have no choice but to remand

---

sion took place, and the Commonwealth did not prove at trial that the discussion occurred less than a month after Field's suit was settled. What the Commonwealth *did* prove at trial was that Field's first discussion *with the Revelopment Authority* took place less than a month (in fact, less than a week) after his suit was settled, this in contradiction to his grand jury testimony. Assignment 3, however, does not limit the inquiry just to Field's first discussions with the Redevelopment Authority; it says simply "first discussions".

Assignment 4 charges Field with having testified that there was *no* financial advantage in having the "lead bank" designation. His actual statement, in response to an inquiry about the advantage of being "lead bank", was, "Mostly it's prestige more than anything else." When asked if the prestige could be translated into dollars and cents, he said, *"Not too much* into dollars and cents, because you have to put up 120 percent of United States Government Bonds, or City of Philadelphia Bonds or Municipal County Bonds. For every dollar that you have there, you have to put up $1.20 as security." (Emphasis added.)

Assignment 5 charges Field with having testified that there was no financial advantage to himself in settlement of the lawsuit. The portion of his grand jury testimony from which this assignment is apparently drawn is the portion at which Field stated, in response to a question, that he had not discussed with the chairman of the Redevelopment Authority any benefits that might flow to him personally. This, of course, is not the same as saying that he did not subsequently receive any benefits from the settlement of the suit. He also testified that Citizens Bank, as lessee of the land which was the subject matter of the suit, was given $55,000 in damages as part of the settlement. It was subsequently revealed that Citizens Bank gave Field and the other co-owner of the property in question $10,000 of the $55,000, and gave an additional $2,500 to Field's wife for attorney's fees.

the case for a new trial. *See Leary v. United States,* 395 U.S. 6 (1969); *Yates v. United States,* 354 U.S. 298 (1957); *Cramer v. United States,* 325 U.S. 1 (1945); *Williams v. North Carolina,* 317 U.S. 287 (1942); *Stromberg v. California,* 283 U.S. 359 (1931).

Citing authorities, the Commonwealth contends that it is proper to set forth several assignments of perjury in the same count. This is true so long as the assignments arise from a single act or transaction or do not relate to separately provable matters; otherwise the indictment should be quashed. *See Commonwealth v. Morgan,* 174 Pa. Superior Ct. 586, 102 A.2d 194 (1954). The issue here, however, is not whether the indictment should be quashed as defective per se by virtue of the inclusion of several assignments in the same count; rather, the issue is whether the inclusion of a *deficient* assignment in a count invalidates a subsequently-returned general verdict. The Commonwealth's authorities are not directed at this latter issue.

The Commonwealth and the court below raise the argument that assignments 1, 2, 4, and 5 were sufficiently withdrawn from the jury, so that it can be determined with certainty that the verdict was based on assignment 3. The basis for this argument is that the prosecutor and the court in its charge both concentrated on the third assignment. Even assuming, however, that assignment 3 was itself sufficient,[8] this argument fails because the court's charge, taken as a whole, does not remove the other assignments from the jury's consideration. In fact, the court, at the beginning of its charge, expressly called the other assignments to the jury's attention as follows: "Members of the jury, the defendant, Sander Field, is charged in a single bill of indictment with the crime of perjury. Essentially, the charges arise out of the Commonwealth's allegation

---

[8] See footnote 7, *supra.*

that Sander L. Field was called as a witness before the April, 1969, Grand Jury, and after having been sworn by Judge Sloane and again advised of his oath, that he unlawfully, willfully, feloniously, corruptly and falsely swore and testified in certain answers to questions asked him relative to his interest in obtaining a lead bank position for Citizens Bank from the Redevelopment Authority, and testimony relative to whether or not it had been offered to him as an inducement to settle this case, which he had brought against the Redevelopment Authority requesting an injunction. In other words, to block the projected action to be taken by the Redevelopment Authority, the City, of course, and National Land in the development of this rather large property for 15th and 16th on the south side of Market; and also his testimony given more than a month after the lawsuit that there was no financial advantage in having the lead bank designation, there was no financial advantage to himself in the settlement of the lawsuit." Additionally, much of the evidence presented at Field's trial was directed at the other assignments, particularly the first and second which have been shown to be insufficient. We therefore cannot now state with certainty that those assignments, and the evidence relating to them, did not play a part in the jury's verdict. *See Commonwealth v. Johnson*, 133 Pa. 293, 19 A. 402 (1890). Accordingly, we must vacate Field's conviction.

Judgment of sentence vacated and case remanded for a new trial.

WRIGHT, P. J., would affirm on the opinion of Judge McDevitt, III.

CERCONE, J., would grant the motion in arrest of judgment and discharge the defendant.