## Commonwealth *v.* Karafin, Appellant.

*Francis S. Wright,* Assistant Defender, with him *Jonathan Miller,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., June 14, 1973:

Defendant Harry J. Karafin was charged with and found guilty after trial by jury of the crime of perjury. He was sentenced to a term of not less than two years nor more than seven years, which was to begin at the expiration of the four to nine year aggregate term he was then serving on conviction of numerous indictments charging, inter alia, blackmail, extortion, and

unlawful solicitation by employe. While these latter charges were being processed against him, defendant, who was at that time an investigative reporter for the Philadelphia Inquirer, sought to charge the Philadelphia District Attorney, Arlen Specter, and his Assistant District Attorney, William H. Wolf, Jr., with maliciously conspiring to have him falsely indicted on these charges and with intimidating and harassing divers people in an effort to obtain testimony against him regardless of the truth.

When several magistrates of the City of Philadelphia and several judges of the Common Pleas Court of Philadelphia refused to consider defendant's complaint against the District Attorney and his Assistant, defendant petitioned the Supreme Court of Pennsylvania, which court referred the matter to the Honorable Vincent A. CARROLL, then President and Administrative Judge of the Common Pleas Court of Philadelphia. In accordance with the directive from the Supreme Court, Judge CARROLL, joined by Judge NIX (now Justice of the Supreme Court of Pennsylvania) held a hearing at which Harry Karafin, the defendant, was permitted to submit to the court the "complaint" he had prepared, the essential allegation of which was, as aforesaid, that the District Attorney and his Assistant maliciously conspired to have him falsely indicted and intimidated and harassed divers people in an effort to obtain testimony against him regardless of the truth. In addition to the written complaint, defendant gave certain sworn oral testimony. The complaint, however, was summarily dismissed by Judges CARROLL and NIX for want of probable cause.

Several weeks later appellant was charged in one bill of indictment with having committed perjury as to four separate matters during the hearing before Judge CARROLL. As already stated, after trial by jury, de-

fendant was found guilty on that perjury indictment.[1] Thereafter, defendant argued motions in arrest of judgment and for new trial which were refused by the court below. Defendant Karafin has appealed to this court, raising several important and serious issues.

The indictment charges that appellant "upon his oath aforesaid did willfully, corruptly, and falsely swear and testify in certain answers to questions asked of him in substance as follows:

"1. That members of the District Attorney's Office did annoy, intimidate, harass, oppress and demand of various people that they sign false statements, knowing them to be false, and to testify, regardless of the truth, concerning the charges and indictments to be brought against the said Harry J. Karafin.

"2. That members of the District Attorney's Office falsely and maliciously conspired or agreed to charge and indict Harry Karafin or cause and procure Harry Karafin to be charged and indicted in a court of criminal jurisdiction with the crime of Blackmail, Conspiracy and Unlawful Solicitation by Employee.

"3. That at a meeting between Harry Karafin, Sylvan Scolnick, and a member of the District Attorney's Office, Scolnick stated that he was lying about Karafin's being president of one of Scolnick's companies, and Scolnick stated that the reason he lied was because there were others to be considered, himself and his family, and he did not care who he named so long as he got off the hook.

"4. That Dr. Daniel Silk, Dr. Raymond Silk, Ralph Anthony, Joseph Py, Daniel Silverman, Hope Frankel,

---

[1] The four assignments of perjury were not defined into separate indictments or into separate counts, and therefore, whether or not the guilty verdict applied to all four assignments of perjury cannot be answered by the record. However, in view of this court's disposition of the matter, this issue becomes immaterial.

and Mitchell Lipshutz told him, Harry J. Karafin, that members of the District Attorney's office threatened, coerced, or otherwise intimidated them to obtain false statements or false testimony concerning the activities of said Harry J. Karafin."

With respect to assignment of perjury No. 4, we are constrained to hold, after a careful study of the record of the warrant hearing before Judges CARROLL and NIX, that the defendant did not swear and testify that the individuals named had "told him, Harry J. Karafin, that members of the District Attorney's office threatened, coerced, or otherwise intimidated them to obtain false statements or false testimony concerning the activities of said Harry J. Karafin." Though the individuals specified in assignment No. 4 were named by defendant as persons he talked to during the course of his investigation, nowhere is there any statement by the defendant that these individuals had in fact told him they had been coerced to testify falsely against him. In fact, nowhere did defendant state anything they told him. The content of his conversations with them is not set forth. This is not an unreasonable or narrow interpretation of the appellant's testimony because it is just as reasonable to deduce from the defendant's testimony at the warrant hearing that though defendant did in fact talk to the individuals named in the fourth perjury assignment, his conclusion as to their being coerced into testifying falsely against him was drawn not from their actual statements to him of such fact, but was a conclusion or opinion drawn from his overall investigation. He testified: "I have made an investigation of the—of certain people in the district attorney's office led by William H. Wolf and Mr. Spec- ter, and Mr. Wolf primarily, in the contacting of vari- ous people; that I have learned *from my investigation* that Mr. Wolf and some of his aides have threatened

certain individuals that they would put them out of business." (Emphasis added.)

There was, therefore, a fatal material variance between the allegations of assignment No. 4 and the probata, the record not showing appellant had testified that the named individuals had, as alleged, told him of wrongful conduct of the District Attorney's office. It naturally follows that the Commonwealth's having produced several of these named individuals to deny their having made such statements to the defendants is without legal significance.[2]

This is not, as contended by the Commonwealth, a case of the alleged false testimony substantially though not literally corresponding to the allegations of the complaint. The allegations of assignment No. 4 were not based either literally or substantially on defendant's actual statements but were based on those inferences and deductions which the Commonwealth chose to draw from defendant's testimony, which testimony, as already stated, reasonably allowed for contrary inferences and deductions to be drawn. A perjury charge based on such inferences and deductions cannot stand for the truth or falsity thereof is dependent on the subjective meaning intended by defendant and is therefore not a matter of direct objective proof. The perjurious statement must be with respect to such fact or facts, that the truth or falsity thereof is susceptible of proof: *Kolaski v. United States*, 362 F. 2d 847 (5th Cir. 1966). As stated in *United States v. Wall*, 371 F. 2d 398, 400 (6th Cir. 1967) : ". . . the essence of the crime of perjury

---

[2] In the case of *Commonwealth v. Field*, 223 Pa. Superior Ct. 258, 263-64 (1972), we had occasion to comment: "We note additionally, though not necessary to the disposition of this appeal, that the other three assignments do not precisely recite Field's grand jury testimony, thus raising the question of whether the variance is sufficiently material to render the assignments defective. See United States v. Laite, 418 F. 2d 576 (5th Cir. 1969)."

as defined in the statute is the belief of the witness concerning the veracity of his testimony. . . . In a case where the question propounded admits of several plausible meanings, the defendant's belief cannot be adequately tested. . ."

Assignment of perjury No. 3 charges defendant with having stated that Sylvan Scolnick at a meeting with the Assistant District Attorney, stated that he, Scolnick, "was lying about Karafin's being president of one of Scolnick's companies, and Scolnick stated that the reason he lied was because there were others to be considered, himself and his family, and he did not care who he named so long as he got off the hook." Defendant's testimony at the warrant hearing was that he was present at this meeting attended by the Assistant District Attorney and Scolnick and, when asked by the court to testify as to what was said, defendant replied that "going directly from memory, Sir, I do not have any notes with me. . . At that meeting I asked Scolnick why he was lying, and Scolnick said, 'There are others to be considered,' himself and his family, and he did not care who he named so long as he got off the hook."

This testimony does substantially correspond with the allegations of assignment No. 3. However, the only witness submitted by the Commonwealth to prove the falsity of this testimony was the Assistant District Attorney, William Wolf, who testified that Mr. Karafin said to Mr. Scolnick: "You know I never had anything to do with Twin State." Mr. Scolnick replied: "Harry, I have to tell the truth. You know better than that."

Even conceding the sufficiency of the content of Mr. Wolf's testimony as proof of the falsity of defendant's statements, the Commonwealth's evidence is nevertheless fatally deficient because the law does not permit a conviction of perjury on the testimony of one witness alone. The two-witness rule in perjury cases

prevails in Pennsylvania and applies to each assignment of perjury, as stated most recently in *Commonwealth v. Field,* supra at page 262: "The first two assignments, which charge essentially the same thing, were not supported by legally sufficient evidence since the two-witness rule was not met. The two-witness rule, as it is applied in Pennsylvania, requires that the falsity element of a perjury conviction be supported either by the direct testimony of two witnesses or by the direct testimony of one witness plus corroborating evidence. Commonwealth v. Russo, 388 Pa. 462, 131 A. 2d 83 (1957); Williams v. Commonwealth, 91 Pa. 493 (1880); Commonwealth v. Gore, 171 Pa. Superior Ct. 8, 90 A. 2d 405, *allocatur refused,* 180 Pa. Superior Ct. xxxviii (1952); Commonwealth v. Antico, 146 Pa. Superior Ct. 293, 22 A. 2d 204, *allocatur refused,* 150 Pa. Superior Ct. xxvii (1941); Commonwealth v. Haines, 130 Pa. Superior Ct. 196, 196 A. 621 (1938); 3 Laub, Pennsylvania Trial Guide §462 (1959). *If an indictment contains several assignments of perjury, each must comply with the two-witness rule.* Williams v. Commonwealth, 91 Pa. 493 (1880); cf. Commonwealth v. Gore, 171 Pa. Superior Ct. 8, 90 A. 2d 405, *allocatur refused,* 180 Pa. Superior Ct. xxxviii (1952)." (Emphasis added.) The Commonwealth did not call Mr. Scolnick to prove the falsity of the statement attributed to him by the defendant. The fact that Scolnick had been brought to the courthouse and was available to the defendant does not absolve the Commonwealth of its duty of proving the falsity of defendant's statement by the direct testimony of two witnesses or of one witness plus corroborating evidence. The Commonwealth therefore failed to meet its burden of proof with respect to assignment No. 3.

Assignments No. 1 and No. 2 allege defendant's false statements at the warrant hearing as to misconduct on

the part of members of the District Attorney's office. These statements by defendant formed the charges which were the subject of the warrant hearing and which were based, according to defendant's testimony, on the results of his investigation. Those charges by defendant therefore necessarily constituted only statements of defendant's conclusions and beliefs. The Commonwealth was therefore bound to prove beyond a reasonable doubt not only the falsity of the statements but also that defendant knew them to be false and did not believe them to be true: *Commonwealth v. Yanni*, 208 Pa. Superior Ct. 191, 194 (1966); *United States v. Hagarty*, 388 F. 2d 713 (7th Cir. 1968); or that the statements represented a rash belief recklessly made without regard to the truth: *Commonwealth v. Shields*, 50 Pa. Superior Ct. 1 (1912). Though proof of falsity is subject to the "two-witness rule", the state of defendant's belief in the falsity can be proved by circumstantial evidence and by inference drawn from proven facts: *United States v. Rivera*, 448 F. 2d 757 (7th Cir. 1971). However, in this case, the evidence presented by the Commonwealth was not sufficient to sustain its burden. The Commonwealth's evidence,—such as the testimony of some of the individuals, named by defendant that they did not inform defendant of the alleged misconduct did not, as already stated, rule out the possibility of existence of other circumstances upon which defendant rested his conclusion or belief as to such misconduct. Nor was the determination at the warrant hearing of lack of probable cause for the issuance of the warrant determinative of defendant's lack of bona fide belief in the truth of his charges. To hold otherwise would be to make a perjury trial against the filer of a criminal complaint a natural appendage to the denial of an arrest warrant on that complaint for lack of probable cause. The issue of probable cause for the

issuance of the warrant and the issue of the bona fides of defendant's belief in his charges are not governed by the same legal criteria. The former is a question of the sufficiency of the evidence to support the issuance of an arrest warrant, which required the application of legal principles to the facts presented the latter poses a question of defendant's state of mind—a subjective matter of the sufficiency of the evidence to support defendant's belief. A person may in good faith, yet mistakenly, believe a crime has been committed but may find that belief not to be supported by law or by evidence which the law deems sufficient.

It is our determination that defendant's conviction cannot be sustained as to any of the assignments of perjury; the sentence is hereby vacated and defendant discharged.

WATKINS, J., dissents.