## Commonwealth *v.* Jenkins, Appellant.

Argued November 18, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and POMEROY, JJ.

*Henry B. Fitzpatrick, Jr.*, with him *D. M. Masciantonio*, for appellant.

*Milton M. Stein*, Assistant District Attorney, with him *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 17, 1971:
On March 2, 1969, about a dozen people, all friends, were gathered at the home of one of their number for cards and conversation. One of the twelve, the appel-

lant, twenty-seven year old Jerome Jenkins, woke up from a nap and went into the kitchen to talk with his lifelong friend, Henry Jefferson, and the others gathered in that room. They were having a friendly conversation, "joking around," and laughing. Suddenly appellant took a gun from his pocket and pointed it around the room. Some of the people there, remembering that a gun was no joking matter, told the appellant that he shouldn't be pointing a gun like that. The appellant confidently explained that the gun wasn't loaded. As is so often the case when people play with guns, the appellant was wrong. He pulled the trigger and the gun clicked. Then he did it again. This time the "empty" gun shot Henry Jefferson in the stomach. As Jefferson fell, the appellant exclaimed "Oh, my God, I shot the man." Jefferson was rushed to the hospital, with the appellant accompanying him. At the hospital appellant was arrested for the shooting but was released on bail. On March 24, 1969, Jefferson died. Appellant, who was visiting him at the hospital, was rearrested and indicted for murder and voluntary manslaughter as well as involuntary manslaughter. A trial held before a judge and jury on September 18, 1969, resulted in a verdict of guilty of voluntary manslaughter and a sentence of three to twelve years at a state correctional institution followed denial of his post-trial motions.

On appeal appellant alleges six errors were committed which deprived him of a fair trial. Three concern the admission into evidence of a subsequent arrest of appellant on May 11, 1969, more than two months after the fatal shooting. The facts surrounding this issue are as follows:

On May 11, 1969, appellant was in a house in the same block as the house where the shooting occurred. In the midst of drinking wine with a group of men, he "started fooling around with a gun." A bystander,

Charles Cornish, testified for the Commonwealth to the effect that after the appellant put the gun in his pocket, returned to his wine, and finally dozed off, Cornish "slipped across the street" and called the police. The Commonwealth then placed a succession of four policemen on the stand to recount how they put on their bulletproof vests, drew their guns and invaded the house where appellant, three of his friends, his gun and his wine were located. The police witnesses further recounted how they placed all four men in a wall-search position, searched each of them and discovered a fully-loaded .22 caliber revolver and 46 rounds of ammunition on the appellant. Appellant was arrested for carrying a concealed weapon. The weapon was the same one used to shoot Jefferson.

Appellant argues that the evidence should not have been admitted under the general rule outlined in *Commonwealth v. Wable,* 382 Pa. 80, 114 A. 2d 334 (1955), where we said: "It is true, of course, that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime, because the fact of the commission of one offense is not proof of the commission of another. . . ."

The Commonwealth argues that there were special circumstances. As we went on to say in *Wable*: "But it is also true that sometimes there exist the 'special circumstances' which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial—in other words where there is such a logical

connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." (Emphasis in original.) See also *Commonwealth v. Foose*, 441 Pa. 173, 272 A. 2d 452 (1971); *Commonwealth v. Coyle*, 415 Pa. 379, 203 A. 2d 782 (1964); *Commonwealth v. Raymond*, 412 Pa. 194, 194 A. 2d 150 (1963); *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963).

The Commonwealth argues that the testimony was properly admitted since it (1) showed that appellant was in possession of the weapon used in the killing; (2) contradicted appellant's statement that he thought the gun was empty when he fired it and his statement that he intended to turn the gun over to the police; and (3) showed that appellant was consistently reckless with even a fully-loaded gun.

Appellant and his counsel admitted, at all times, that the gun was the one used to kill Jefferson and that it was appellant who pulled the trigger. The fact that appellant did not in fact turn the gun over to the police could have been established without the testimony of which appellant complains. Consequently we are convinced that the only reason the Commonwealth put the testimony of Charles Cornish and four policemen into evidence was, as appellant alleges, "to create the impression that [appellant] was consistently reckless with a dangerous weapon and that the shooting was thus not accidental." The Commonwealth seems willing to admit this, but argues that nevertheless such evidence is relevant to show specific intent.

We strongly disagree. Allegations of appellant's recklessness with a loaded gun on May 11, 1969, have no relation to his recklessness on March 2, 1969. The case is easily distinguishable from cases where the proof of the commission of a crime of the same nature, not too distant in time, was admitted to show plan,

scheme, motive and design such as *Commonwealth v. Raymond, supra,* upon which the Commonwealth relies. *Raymond* involved a crime which took place one week before the crime for which the defendant was being tried, not one which occurred nine weeks afterward. (See *Commonwealth v. McIntyre,* 417 Pa. 415, 208 A. 2d 257 (1965), dealing with the inadmissibility of evidence of subsequent arrests). Furthermore, *Raymond* involved a crime which had a "plan, scheme, motive and design." Here, the evidence, including the evidence we hold inadmissible, tends to show that the crime was done recklessly, without any thinking at all.

Moreover, even the Commonwealth cannot argue that the testimony of the four policemen was relevant to show the appellant's recklessness. The appellant made no attempt to resist their invasion and arrests. There was no shot fired to show the relevance of their bulletproof vests. The whole saga of this arrest could only be calculated to prejudice the jury unfairly by leading them to think that the appellant was extremely dangerous, a veritable John Dillinger. Having ruled the evidence inadmissible, we need not concern ourselves with the other two errors alleged concerning the court's treatment of this issue. The trial court's explanation that there was no error because the four policemen did not testify as to the actual arrest of the appellant is completely unsatisfactory. The fact that the arrest was not mentioned specifically does not negate the highly prejudicial effects of totally irrelevant testimony.

Judgment reversed and new trial granted.

Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.