386 A.2d 1014

**COMMONWEALTH of Pennsylvania**

v.

**James J. WEITKAMP, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Elmer C. BORTNER, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1976; Argued March 16, 1977.

Decided April 28, 1978.

306

308

310

312

Robert L. Knupp, Harrisburg, with him Knupp & Andrews, Harrisburg, for appellant James J. Weitkamp.

Harold N. Fitzkee, Jr., York, submitted a brief for appellant Elmer C. Bortner.

Reid H. Weingarten, Deputy District Attorney, Harrisburg, with him LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

PRICE, Judge:

On January 20, 1975, following a joint trial before a jury, appellants were convicted of perjury.[1] After the denial of post-trial motions, appellant Weitkamp was sentenced to pay costs and a fine of $500, and to imprisonment for one year. Appellant Bortner was sentenced to one year in prison. These appeals raise numerous, substantially identical claims of error in regard to the proceedings below. After a careful review, we have found appellants' claims to be without merit and affirm the judgments of sentence.

In May of 1973, the Pennsylvania Crime Commission received a letter from the solicitor of York, Pennsylvania, requesting its aid in the investigation of an alleged kickback

_____

1. 18 Pa.C.S. § 4902.

or payoff scheme involving the York Police Department. Stories had appeared in the news media charging that some York police officers had accepted payments from tow truck operators for the referral of towing business. Agents of the Commission conducted a preliminary investigation, and on that basis, the Commission passed a resolution mandating a full scale investigation and authorizing private hearings. The Executive Director of the Pennsylvania Crime Commission at that time, Lawrence T. Hoyle, Jr., designated Deputy Attorney General Curtis Pontz to conduct the investigation and hearings.

Appellant Weitkamp, who had been a tow truck owner and operator in the York area in the late 1960's and early 1970's, was subpoenaed as a witness and appeared at a Crime Commission hearing on November 7, 1973. Appellant Bortner, a York police officer for a number of years, appeared before the Commission on December 20, 1973. In response to direct questioning, Weitkamp denied ever having made cash payments to York police officers for towing referrals. Bortner similarly denied ever paying cash to York police officers on behalf of tow truck operators for business referred to them. Based on the testimony of a number of York police officers contradicting appellants' asseverations, the Crime Commission brought the possibility of perjury charges against appellants to the attention of the District Attorney of Dauphin County.[2] Criminal complaints were subsequently issued, and appellants were arrested, given preliminary hearings and indicted. A joint trial resulted in guilty verdicts against both appellants.

We will first examine the issues raised on appeal by both Weitkamp and Bortner.

Appellants allege that the Crime Commission hearings wherein they testified were, for various reasons, violative of their constitutional rights. This claim was not preserved in appellant Weitkamp's written post-trial motions and he has

2. Although the events prompting the investigation occurred in York County, the Crime Commission hearings were held in Dauphin County.

therefore waived it. *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A.2d 171 (1975); *Commonwealth v. Keysock*, 236 Pa.Super. 474, 345 A.2d 767 (1975). In his brief, appellant Bortner contends that the proceedings of the Crime Commission involved herein were accusatory rather than investigatory and that he was thus improperly denied his right to confront and cross-examine the witnesses against him. This argument regarding the nature of the Crime Commission was considered and rejected by our supreme court in *Pennsylvania Crime Commission Subpoena*, 453 Pa. 513, 309 A.2d 401 (1973), *citing with approval Pennsylvania Crime Commission v. Nacrelli*, 5 Pa.Cmwlth. 551 (1972). Thus there is no merit to this contention.

The next issue is a challenge to the oath-administering authority of the Deputy Attorney General who administered the oaths at the Crime Commission hearings. Appellant Weitkamp has waived his claim by failing to raise it in his written post-trial motions. We will thus address the issue as framed by appellant Bortner. The offense of perjury is defined in section 4902 of the Crimes Code as follows:

A person is guilty of perjury, a felony of the third degree, if in an official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of the statement previously made, when the statement is material and he does not believe it to be true.

In *Commonwealth v. Russo*, 388 Pa. 462, 131 A.2d 83 (1957), the elements of the crime receive further elaboration:

[T]he crime of perjury has a number of elements: (a) An oath to tell the truth must be taken by the accused, and (b) administered by legal authority, (c) in a judicial proceeding (or statutory affidavit). (d) The accused must have testified in such proceeding, and (e) his testimony must be material to the judicial proceeding. (f) The testimony assigned as perjury must be false, and (g) must be given wilfully, and corruptly, and with knowledge of its falsity (or given recklessly), and for the purpose of having it believed. 388 Pa. at 467, 131 A.2d at 86.

The official who administered the oath to appellant Bortner was Mr. Curtis Pontz, a staff attorney for the Crime Commission. Appellant contends that Mr. Pontz was without legal authority to administer oaths, asserting that (1) the authority to administer an oath in an extrajudicial proceeding requires a specific legislative mandate; (2) the legislature has not made such a delegation to the Crime Commission; and (3) even assuming that members of the Crime Commission have the ability to administer oaths, no proper or effective delegation of that authority was made to transmit it further along the administrative chain to Mr. Pontz.

■ The composition and organization of the Crime Commission are set forth in section 469 of the Administrative Code,[3] while its powers and duties are listed in section 923 of the Administrative Code.[4] Under the latter heading, 71 P.S. § 307–7(9) provides, in pertinent part, that the Commission has the power:

> To require the attendance and testimony of witnesses and the production of documentary evidence relative to any investigation which the commission may conduct in accordance with the powers given it.

This provision presumes that some personages within the Crime Commission have the authority to administer oaths, as the ability to compel testimony would avail little without the concomitant prerogative of applying the full force of the law to assure its veracity. This presumption is borne out in section 517 of the Administrative Code,[5] which states:

> The head of every administrative department, all deputy heads of administrative departments, every member of an independent administrative or departmental administrative board or commission, the Commissioner of the Pennsylvania State police, every workmen's compensation

3. Act of April 9, 1929, P.L. 177, § 469, *added* July 31, 1968, P.L. 754, No. 235, § 2 [71 P.S. § 179 (Supp.1977–78)].

4. Act of April 9, 1929, P.L. 177, § 923 [917], *added* July 31, 1968, P.L. 754, No. 235, § 3 [71 P.S. § 307–7 (Supp.1977–78)].

5. Act of April 9, 1929, P.L. 177, art. V, § 517 [71 P.S. § 197] *as amended.*

referee, and such officers or employes of the several administrative departments, boards, or commissions, as the heads of such departments or such boards or commissions shall designate, shall have the power to administer oaths or affirmations anywhere in this Commonwealth, with regard to any matter or thing which may properly come before such department, board, commission, commissioner or referee, or any member of a board or commission, as the case may be.

■ The Pennsylvania Crime Commission is a departmental commission. Administrative Code § 202.[6] Thus the four commissioners and the Attorney General as chairman of the Commission, 71 P.S. § 179(a), have the power to administer oaths, and additionally, are able to delegate this power to designated employes of the Commission. Such a delegation has taken place under 71 P.S. § 307–7(10), which empowers and requires the Commission:

> To compile and publish rules for the calling of meetings and to carry out the provisions of this act. Such rules may be altered or amended at any time but shall not take effect until filed with the Secretary of State.

By resolution dated February 26, 1972, Attorney General J. Shane Creamer and the three other members of the Pennsylvania Crime Commission formally ratified[7] the rules of the Crime Commission, which were published at 1 Pa. Bulletin 2231 on December 4, 1971.

At least two provisions of the Rules of the Pennsylvania Crime Commission authorized the administration of the oath at issue in this case. Section 2.2(a) empowered Curtis Pontz

**6.** Act of April 9, 1929, P.L. 177, art. II, § 202 [71 P.S. § 62 (Supp. 1977–78)] *as amended.*

**7.** Paragraph (c) of that resolution provides:
> In order to avoid unwarranted challenges to the procedure for adopting and enacting the new rules, the members of the Commission unanimously ratify and approve those new rules as if that approval had been formally given at a duly constituted Commission meeting and duly recorded at or before the adoption and publication of those rules.

to administer oaths in his capacity as a staff counsel to the Crime Commission.

> The Chairman may appoint such staff members as he deems necessary. Staff members designated as the executive director, chief counsel, assistant counsel, and special agents shall have the authority to administer oaths and affirmations, conduct interviews, receive and record testimony, receive and inspect documents and records, and otherwise obtain evidence and gather information by any lawful means.

Section 2.5(b) authorized Mr. Pontz to administer oaths as presiding officer of the hearing.

> The presiding officer shall administer oaths and affirmations to witnesses, rule upon matters arising in the course of the hearing, and take such actions as may be necessary to insure that the hearing proceeds in an orderly and proper manner.

Having determined that 71 P.S. § 197 gives the commissioners and the Attorney General the authority to administer oaths and the power to delegate this function to designated employes of the Commission, the sole remaining question is whether such a delegation was properly and effectively accomplished through the rule-making power invested in the Commission by 71 P.S. § 307–7(10).

The above rules specifically designate those individuals authorized to administer oaths. We find this to be a manifestly reasonable exercise of the delegatory function set forth in the enabling legislation. Appellant's claim is therefore without merit.

Appellants next allege that the lower court erred in denying their requests to be tried separately. Pa.R.Crim.P. 219 governs the joinder or severance of offenses and defendants in criminal trials. In pertinent part, it provides:

> (b) Two or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a com-

mon scheme or plan. There shall be a separate count for each offense charged.

(c) Subject to the limitations of paragraph (b), two or more defendants may be joined in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. They may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Although an argument might be advanced that Rule 219 refers only to consolidation within a single indictment and that it therefore provides no authority for joining two defendants charged in separate indictments, our supreme court has foreclosed such a contention. In *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973), the court held as follows:

In order to facilitate our disposition of this appeal, we adopt the approach to the consolidation of indictments embodied in Fed.R.Crim.P. 13, which provides: "The court may order two or more indictments, or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information." 453 Pa. at 192, 307 A.2d at 266–67.

Our inquiry thus becomes whether appellants could have been charged in a single indictment under Pa.R.Crim.P. 219. Appellants point out that their allegedly perjurious statements took place on separate occasions during different hearings of the Crime Commission. They further contend that because they were not charged with subornation of perjury or conspiracy to commit perjury there was no connection between the two distinct instances of false testimony. It is asserted that the situation in this case is similar to that in *Commonwealth v. Belgrave*, 445 Pa. 311, 316, 285 A.2d 448, 450 (1971), where the court found that "the complexity of the evidence and the extreme variation in the

amount and type of evidence against the various defendants required marshalling the evidence against and for each defendant separately."

The Commonwealth, on the other hand, provides a number of reasons why appellants were properly tried together. Weitkamp and Bortner appeared in different hearings before the Crime Commission, approximately six weeks apart, investigating the same subject matter. Appellants were questioned by the same hearing examiner before the identical hearing panel. Weitkamp denied ever making payments to York police officers for towing referrals, while Bortner subsequently denied ever making payments to officers on behalf of tow truck operators. Testimony at trial established that Weitkamp had in fact made cash payments to at least five officers. Evidence was adduced that Bortner gave money to eleven officers, and had told some of these individuals that the payments had been made because they had investigated an accident to which Weitkamp's tow truck had been summoned. All the testifying officers stated that they related the use of Weitkamp's truck, in connection with accident investigations or disabled vehicles, to the receipt of payments. The Commonwealth introduced evidence that appellants were personal friends and that Bortner lent Weitkamp money used in the purchase of Weitkamp's tow truck which, according to the title, had been encumbered to Bortner. Four officers testified that they received money from both Weitkamp and Bortner, and all those testifying as to payments from Bortner said that they connected these occurrences with the use of Weitkamp's towing service.

> The trial judge because of his position and for other obvious reasons has been given a discretion to determine whether a number of bills of indictment should be consolidated and tried together, and his exercise of discretion in such matters will not be reversed by an appellate Court unless there has been a manifest abuse of discretion or a joint trial is so unfair as to be clearly unjust and prejudicial to one or more of the defendants. Especially is a joint trial permissible, if not advisable, when the crimes

charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants . . . . *Commonwealth v. Jackson*, 451 Pa. 462, 464, 303 A.2d 924, 925 (1973), *quoting Commonwealth v. Kloiber*, 378 Pa. 412, 415, 106 A.2d 820, 822–23 (1954). *See also Commonwealth v. Belgrave, supra.*

■ The evidence herein indicates that appellants participated in a common scheme or enterprise in making payments to York police officers in return for towing referrals to appellant Weitkamp. In order to conceal their former activity, it was necessary for appellants to testify falsely before the Crime Commission. The two acts of perjury charged against Weitkamp and Bortner were separate in time, but inextricably bound together in other ways. Appellants shared a common motive for perjury before the same body in response to the same inquiry concerning the same investigation, and the evidence of the underlying factual basis necessary to prove the falsity of their testimony came from a closely related group of witnesses, four of whom testified against both appellants. Under these circumstances the lower court could reasonably have determined that "the crimes charged grew out of the same acts and much of the same evidence [was] necessary or applicable to both defendants . . . ." *Commonwealth v. Jackson, supra,* 451 Pa. at 464, 303 A.2d at 925. Therefore, there was no error in the denial of appellants' motions for separate trials.

In claims which are closely related to the propriety of the joint trial, each appellant complains of testimonial evidence which allegedly was inadmissible in relation to him. Appellant Weitkamp points to several instances where witnesses, York police officers, testified to statements of appellant Bortner wherein Bortner adverted to the calling of Weitkamp's truck or otherwise mentioned Weitkamp in explaining the reason for payments. In *Commonwealth v. Kubacki,* 208 Pa.Super. 523, 224 A.2d 80 (1966), several defendants were charged, *inter alia,* with conspiracy and extortion under color of office. On appeal the joint trial was attacked as improper and prejudicial, arguments which the court treated as follows:

It is not uncommon in the trial of more than one indictment for some evidence to be competent and relevant as to one or more indictments and incompetent and irrelevant as to others. However, the test is whether there is prejudice, *Commonwealth v. Evans, supra; Commonwealth v. Giambrone,* 183 Pa.Super. 283, 130 A.2d 254 (1957); and this is generally determined by the adequacy of the instructions given the jury. 208 Pa.Super. at 527, 224 A.2d at 82.

■ In the instant case the trial court repeatedly instructed the jury in regard to testimony which was to be used as evidence only against appellant Bortner. (NT 137, 158). The court reiterated these instructions in its charge to the jury. (NT 559–60). Appellant Bortner asserts that it was prejudicial error for the lower court to allow portions of appellant Weitkamp's testimony before the Crime Commission to be read into the record at trial. However, the court again specifically instructed the jury that Weitkamp's testimony from the Crime Commission hearing was evidence only against Weitkamp and not against Bortner. (NT 137). Counsel for Bortner indicated his satisfaction with this instruction. It was not error to overrule appellants' respective hearsay objections to evidence which was not admitted against them. In light of the holding in *Commonwealth v. Kubacki, supra,* the aforementioned claims do not merit appellate relief.

■ Appellants also contend that the admission of each one's prior testimony violated the other's right to confrontation in that neither was present or represented at the hearing of the other and hence each was deprived of the opportunity to cross-examine the other. In support of this position, appellants cite *Commonwealth v. Ellsworth,* 409 Pa. 505, 187 A.2d 640 (1963), but that case is inapposite to the instant facts. In *Ellsworth,* a statement by the appellant's co-conspirator to a third person was admitted in the appellant's trial. The court found that the statement had been made after the conspiracy ended and thus was not admissible under that hearsay exception, that it was highly prejudi-

cial in nature and that its use as evidence against the appellant required a new trial. In this case the prior testimony introduced at trial, although relevant to each appellant's motivation for perjury, was not inculpatory or clearly prejudicial. This is illustrated by the fact that appellants admitted essentially the same facts in their trial testimony. Further, appellants both testified at trial and were fully available for cross-examination by each other. There was thus no violation of appellants' right to confrontation. *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1976).

■ There is an additional basis for the admission of much of the evidence which appellants assert was erroneously allowed. The proof adduced by the Commonwealth connected appellants in a joint criminal enterprise. "The conduct of the parties and the circumstances surrounding their activities may support the inference that a conspiracy did exist. *Commonwealth v. Waters,* 463 Pa. 465, 345 A.2d 613 (1975); *Commonwealth v. Esposito,* 236 Pa.Super. 127, 344 A.2d 655 (1975)." *Commonwealth v. Ridgely,* 243 Pa.Super. 397, 401, 365 A.2d 1283, 1285 (1976). In fact, "[a]n explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Commonwealth v. Waters, supra,* 463 Pa. at 471, 345 A.2d at 616, *quoting Commonwealth v. Strantz,* 328 Pa. 33, 43, 195 A. 75, 80 (1937). Testimony by York police officers recounting statements by either appellant involving the other were admissible under the exception to the hearsay rule applicable to statements by a co-conspirator. *See generally* 4 Wigmore, Evidence § 1078 (Chadbourn rev.1972); McCormick on Evidence § 267 (2nd ed.1972).

The co-conspirator whose declaration is testified to need not be on trial; *Commonwealth v. Biddle,* 200 Pa. 640 (1901), 50 A. 262, and no conspiracy need be charged: *Commonwealth v. Petrillo,* 338 Pa. 65 (1940), 12 A.2d 317. The defendant against whom the declaration is used need

not be present when it was made: *Commonwealth v. Spardute,* 278 Pa. 37 (1923), 122 A. 161. *Commonwealth v. Garrison,* 398 Pa. 47, 51, 157 A.2d 75, 77 (1959); *accord, Commonwealth v. Stoltzfus,* 462 Pa. 43, 59, 337 A.2d 873, 880–81 (1975).[8]

 To lay a foundation for the co-conspirator exception to the hearsay rule, the Commonwealth must prove that: (1) a conspiracy did exist between the declarant and the person against whom the evidence is offered[9] and (2) that the statement sought to be admitted was made during the course of the conspiracy.[10] *Commonwealth v. Ellsworth, supra.* Here, there is no question that the Commonwealth adduced sufficient circumstantial proof of a conspiracy and that the conspiracy was viable when the statements testified to were made.

Appellant Bortner also contends that evidence of uncharged crimes, including bribing public officers, obstructing justice and conspiracy, was admitted against him, prejudicing his cause. He cites *Commonwealth v. Jenkins,* 442 Pa. 588, 591, 277 A.2d 356, 357 (1971), *quoting Commonwealth v. Wable,* 382 Pa. 80, 84, 114 A.2d 334, 336 (1955), for the proposition "that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime, because the fact of the commission of one offense is not proof of the

8. Both *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975) and *Commonwealth v. Garrison,* 398 Pa. 47, 157 A.2d 75 (1959) involved statements by a conspirator *to a co-conspirator* rather than to a third person. This distinction does not affect the admissibility of the evidence here.

9. Appellants urge that no sufficient proof of the conspiracy was introduced prior to the complained of testimony. Lack of proper foundation was not raised as a basis for objection to the testimony at trial, however, and this theory cannot be asserted for the first time on appeal. *Commonwealth v. Stoltzfus, supra; see also Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975).

10. The additional requirement listed in *Commonwealth v. Ellsworth,* 409 Pa. 505, 187 A.2d 640 (1963), that the declaration must be in furtherance of the criminal purpose, is generally held to be met by proof that it was made during the existence of the conspiracy. McCormick on Evidence § 267 (2nd ed. 1972).

commission of another." This is certainly a correct statement of the law, but appellant's analysis stops well short of the mark.

[T]here sometimes exist special circumstances which operate as exceptions to the general rule and bring the case within the equally well established principle that evidence of other crimes is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial . . .. *Commonwealth v. Peterson,* *supra,* 453 Pa. at 197–98, 307 A.2d at 269.

To whatever extent the evidence of which appellant complains suggested extraneous crimes, it was nonetheless clearly admissible as it tended to establish (1) a motive for appellant to perjure himself and (2) the falsity of the allegedly perjurious testimony before the Crime Commission.

Appellants object to the introduction into evidence of certain motor vehicle titles. These titles reflected Weitkamp's ownership of the vehicles (towtrucks) and Bortner's encumbrances thereon. Weitkamp asserts that the titles should have been excluded as evidence of an uncharged conspiracy, an argument we considered and rejected above. Bortner, on the other hand, contends that section 1224 of the Vehicle Code should not be construed to allow the introduction of vehicle titles as evidence in a perjury prosecution. That section provides:

Any certified copies, or certified photostatic copies, or certified microfilm reproductions, of any records, books, papers, documents, and rulings of the secretary, when certified under the seal of the department by its duly authorized agent, shall be acceptable as evidence in the courts of this Commonwealth with the same force and effect as the originals, in all cases where such original

records, books, papers, documents, and rulings would be admitted in evidence.[11]

Appellant Bortner would interpret section 1224 as authorizing the admission of certified copies of titles only as relating to "vehicular cases and rules of the road." (Appellant's Brief at 40). No authority is cited for this extremely narrow construction and it finds no support in the language of the statute. Appellant also argues that the documents were improperly admitted because "[a]lthough an indicium of ownership, a certificate of title is not conclusive evidence of ownership of a motor vehicle but rather establishes the person entitled to possession: (citations omitted)." *Summers Estate,* 424 Pa. 195, 198, 226 A.2d 197, 199 (1967). This argument goes to the weight to be accorded such evidence, however, and not to its admissibility.

Appellants allege that the lower court erred in admitting the transcripts of their testimony before the Crime Commission into evidence. The case of *Ingram v. Pittsburgh,* 346 Pa. 45, 29 A.2d 32 (1942), is cited for the requirement that unless testimony has been recorded by an official court reporter, in order for a transcript to be admissible the ability of the stenographer must be shown and the stenographer must testify to the accuracy of her notes and the transcription thereof. Julia Lundwall, the stenographer who recorded appellant Bortner's hearing testimony, appeared as a witness at trial. In the course of Miss Lundwall's testimony, counsel for Bortner stated his acceptance of her qualifications as an official reporter. Later, on cross-examination, defense counsel's questions established that Miss Lundwall had not typed the transcript or compared the transcript with her stenographic notes nor had she personally signed the certification at the end of it. The witness explained, however, that the transcript was prepared according to standard procedures and that she had read it and found it to be accurate. The court held the transcript to be admissible, ruling that the matters raised on cross-exami-

11. Act of April 29, 1959, P.L. 58, § 1224, *as amended* October 2, 1974, P.L. 660, No. 217, § 2 [75 P.S. § 1224 (Supp.1977–78)].

nation went to the credibility of the witness and the weight to be accorded the evidence. We find that the requirements of *Ingram, supra,* were met and that there was no error in the lower court's ruling.

The admission of the transcript of appellant Weitkamp's hearing testimony is more troublesome. The stenographer who recorded that hearing, Mrs. Adelman, did not testify at trial. The Commonwealth introduced a letter from Mrs. Adelman's doctor stating that, for medical reasons, she was unable to appear. Despite defense counsel's specific objection based on his lack of opportunity to cross-examine Mrs. Adelman, we find that under the circumstances of this case, the trial court did not err in allowing the Weitkamp transcript into evidence.

In order to analyze this issue properly, it is necessary to look at the rule announced in *Ingram v. Pittsburgh, supra,* within the factual context of that case. Ingram was injured in an automobile accident. Attempting to establish his loss of earnings, he testified that he worked mainly as a paper hanger and painter, spending only one or two hours a day tending bar in an establishment owned by him and his wife. Seeking to destroy the plaintiff's credibility, the defense introduced a transcript of his testimony at a Liquor Control Board hearing which had taken place shortly before the accident. According to the transcript, the plaintiff had testified that he normally worked at the bar from noon until closing.

After setting forth the aforementioned requirements for the admissibility of transcripts, the *Ingram* court observed that "[t]he notes or transcripts of an ordinary stenographer are not receivable, however, since they are merely hearsay of a person not produced." 346 Pa. at 47, 29 A.2d at 34. In contrast, at least a part of Weitkamp's prior testimony as utilized in the instant case was offered to show the commission of the act of perjury and thus was not hearsay. McCormick on Evidence § 254 (2nd ed. 1972).

There are several additional points of distinction between the situation in *Ingram* and the facts of the instant case

which support the admission of the transcript against appellant. First, two employees of the Crime Commission, Curtis Pontz, the hearing officer and Carl W. Schleicher, a Commission agent, were present at the hearing where appellant testified. At trial, both Pontz and Schleicher testified that they had read the hearing transcript and had found it to be accurate. In *Ingram,* on the other hand, there were no witnesses to the authenticity and accuracy of the transcript.

Another important consideration is that the testimony at the Commission hearings was taped in addition to being recorded stenographically. The tape of appellant's testimony was made available to him by the Commonwealth for comparison to the transcript. The Commonwealth offered to play the tape for the jury, and appellant was given the opportunity to make whatever corrections he found to be required after the tape and transcript had been compared and before any portion of the transcript was read to the jury.

 For the reasons we have discussed, we find that this case is distinguishable from *Ingram v. Pittsburgh, supra,* and that the lower court did not err in admitting the transcript.

 The next issue is the alleged inadequacy of the *Miranda* warnings appellants received prior to their Crime Commission testimony. As to appellant Bortner, the record reveals that, prior to any questioning, Mr. Pontz informed him of the subject area under investigation, that his testimony could be used against him, that his testimony might provide the basis for a subsequent prosecution by an appropriate law enforcement agency, that he had a right to refuse to answer any question which might tend, directly or indirectly, to incriminate him, and that he had the right to confer with counsel, privately if he preferred, at any time. Appellant contends that the hearing where he testified was an accusatorial proceeding, not an investigative one, and that he was inadequately apprised of his right to remain silent. Earlier in this opinion we considered the identical

claim regarding the nature of the Crime Commission proceedings and found it unsupported. Appellant was effectively warned of the substance of his constitutional rights. *See Commonwealth v. Spriggs,* 463 Pa. 375, 344 A.2d 880 (1975).

Appellant Weitkamp contends that he was given no *Miranda* warnings prior to his testimony. He bolsters his claim with the fact that although the stenographic transcript of his testimony contains a detailed warning colloquy, no such passage exists on the tape of the hearing. Mr. Pontz testified at trial that this discrepancy stemmed from the stenographer's practice of activating the tape recorder only at the start of actual questioning. This custom was observed because the warnings were read from a card and were always the same. Mr. Pontz asseverated his certainty that he had given the warning statement exactly as it appeared in the transcript. On the basis of this testimony the trial court properly found that appellant had received *Miranda* warnings and that his complaint on this point was without merit.

Appellants contend that they were deprived of their ability to cross-examine prosecution witnesses effectively by the lower court's denial of their pretrial application for discovery and by its editing of the transcripts of those witnesses' former testimony before making them available to appellants at trial. Appellants wished to obtain transcripts of the testimony of all Commonwealth witnesses who testified in Crime Commission hearings. Although the trial court denied appellants' pretrial application, it reviewed the prior testimony of each witness in its entirety and determined what portions were relevant to the trial. Copies of these materials were supplied to the respective defense attorneys.

The rule governing discovery in Pennsylvania criminal cases is Pa.R.Crim.P. 310, which provides, in pertinent part, as follows:

> The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or

photograph any written confessions and written statements made by the defendant. No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons. The order shall specify the time, place and manner of making discovery or inspection and may prescribe such terms and conditions as are necessary and proper. In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth.

Following a hearing, the trial court refused appellants' requests for pretrial discovery on the basis of the last sentence of Pa.R.Crim.P. 310, *supra*. While the court's denial of pretrial discovery was not error, a blanket refusal to give appellants access to the prior testimony at trial would have required reversal. *See Commonwealth v. Grayson*, 466 Pa. 427, 353 A.2d 428 (1976); *Commonwealth v. Kontos*, 442 Pa. 343, 276 A.2d 830 (1971); *Commonwealth v. Smith*, 417 Pa. 321, 208 A.2d 219 (1965). The issue which remains to be resolved is the propriety of the court's editing of each witness' prior testimony before making it available to appellants.

In its opinion, the trial court relies on language from the American Bar Association's recommended standards for criminal justice. The ABA Standards for Criminal Justice, Discovery and Procedure Before Trial, § 2.1(a)(1) (1970) provides: "(a) Except as is otherwise provided as to matters not subject to disclosure (section 2.6) and protective orders (section 4.4), the prosecuting attorney shall disclose to defense counsel the following material and information within his possession or control: (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their *relevant* written or recorded statements. . . ." This provision is quoted with approval in *Commonwealth v. Kontos, supra*. The court reasons that appellants were entitled only to the relevant portions of the witnesses' prior testimony and that relevance was properly a matter for it to deter-

mine. This rationale is directly in line with one of our court's most recent pronouncements in this area.

While we have stated that when a timely request is made for a pre-trial statement of a Commonwealth witness, the judge has a duty to review that statement, and make available to the defendant the relevant portions of that statement, *Commonwealth v. Robinson*, 229 Pa.Super. 131, 324 A.2d 441, *allocatur refused*, 229 Pa.Super. xxxv (1974), this is indeed a far cry from saying that an accused is entitled to any and all prior statements a prosecution witness may have made, regardless of whether or not it involved the accused's case, or some unrelated case. *Commonwealth v. Kelly*, 245 Pa.Super. 351, 358, 369 A.2d 438, 442 (1976); *accord, Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 325 A.2d 289 (1974); *Commonwealth v. Hustler*, 243 Pa.Super. 200, 364 A.2d 940 (1976); *but see Commonwealth v. Grayson, supra.*

Even were we persuaded by appellants' arguments on this issue, however, we would not accord them the relief they seek. Appellants do not cite any specific objection to the edited form of the transcripts, and our review of the record has revealed no such protest by either defense counsel. The objections to which appellants refer this court are (1) to an illegible copy of a transcript (NT 250) and (2) to a transcript which began with an incomplete question. (NT 342). In the first instance the district attorney gave defense counsel his copy of the transcript, while in the second the court provided the beginning of the question. Appellants also advert to one instance where disclosure of any kind was refused. (NT 207). There defense counsel, prior to the witness' testimony, sought to discover any statement he might have made to the district attorney or the Crime Commission. The district attorney stated that the witness was going to testify only regarding a document, which the Commonwealth subsequently introduced. Neither defense counsel renewed the request after direct examination or asked the witness if he had in fact appeared before the Crime Commission or made any prior statements. Appellants did not specifically object

to the edited transcripts at trial, and they may not now claim error on that basis. *Commonwealth v. Stoltzfus, supra*; *see also Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975); *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975).

Appellants' next claim that the Commonwealth's proof did not establish an essential allegation in their indictments. Appellants contend that the evidence was insufficient to prove that they paid money for the referral of towing business, as the Commonwealth charged. The principal case appellants cite in support of their position is *Commonwealth v. Karafin*, 224 Pa.Super. 449, 307 A.2d 327 (1973). In that case, the appellant had been convicted of perjury on the basis of a written complaint and sworn oral testimony given in a hearing where the appellant charged the Philadelphia District Attorney with conspiracy, harassment and intimidation of witnesses and other illegalities which allegedly occurred during the appellant's prior prosecution for blackmail, extortion and other offenses. One of the instances of perjury alleged in the indictment was that Karafin had stated that certain named persons had told him that they had been threatened or coerced by members of the District Attorney's office. In its review of the record, the court found that Karafin had not said that these charges had been related to him personally, but that they had been uncovered in the course of his investigation. The variance between what the indictment charged the appellant with saying and what the prosecution proved that he said was held fatal to that assignment of perjury.

This is not, as contended by the Commonwealth, a case of the alleged false testimony substantially though not literally corresponding to the allegations of the complaint. The allegations of assignment No. 4 were not based either literally or substantially on defendant's actual statements but were based on those inferences and deductions which the Commonwealth chose to draw from defendant's testimony, which testimony, as already stated, reasonably allowed for contrary inferences and deductions to be drawn.

A perjury charge based on such inferences and deductions cannot stand for the truth or falsity thereof is dependent on the subjective meaning intended by defendant and is therefore not a matter of direct objective proof. The perjurious statement must be with respect to such fact or facts, that the truth or falsity thereof is susceptible of proof: *Kolaski v. United States*, 362 F.2d 847 (5th Cir. 1966). As stated in *United States v. Wall*, 371 F.2d 398, 400 (6th Cir. 1967): ". . . the essence of the crime of perjury as defined in the statute is the belief of the witness concerning the veracity of his testimony . . . In a case where the question propounded admits of several plausible meanings, the defendant's belief cannot be adequately tested . . . ." 224 Pa.Super. at 454–55, 307 A.2d at 330–31.

The situation herein is not parallel to *Karafin*. In this case there is no question that appellants made the statements charged in the indictment. At trial, however, Weitkamp testified that he gave money to officers on certain occasions but that these pecuniary gifts were in the nature of tips or gratuities for special favors, not for the referral of towing business. Bortner now asserts that while there is evidence that he made payments to officers, there is insufficient proof that these payments were kickbacks for the use of Weitkamp's tow truck. Appellants argue that, based on these considerations, the truth or falsehood of their negative replies to the towing referral question was entirely subjective and not susceptible to proof. In other words, if appellants themselves could reasonably have believed that their answers were true those answers could not be perjurious. The prosecution must "prove beyond a reasonable doubt not only the falsity of the statements but also that defendant knew them to be false and did not believe them to be true: *Commonwealth v. Yanni*, 208 Pa.Super. 191, 194, 222 A.2d 617 (1966) . . . ." *Commonwealth v. Karafin, supra*, 224 Pa.Super. at 457, 307 A.2d at 332.

Appellants' analysis on this point is slightly out of focus. Here the jury was not faced with an ambiguous

question or an ambiguous answer. The truth or falsity of appellants' testimony depended upon whether or not the payments were in fact made for towing referrals, and if this fact was established, appellants could not claim a reasonable belief to the contrary. It is clear that "the state of defendant's belief in the falsity can be proved by circumstantial evidence and by inference drawn from proven facts: *United States v. Rivera*, 448 F.2d 757 (7th Cir. 1971)." *Commonwealth v. Karafin, supra*, 224 Pa.Super. at 457, 307 A.2d at 332.

Although none of the Commonwealth witnesses was able to state directly and with total certainty that the payments from appellants were towing kickbacks, the evidence admitted of no other plausible explanation and was unquestionably sufficient to establish this fact beyond a reasonable doubt. Five officers testified to receiving payments from appellant Weitkamp. There was testimony that when he was called to tow a vehicle he had sometimes paid cash to the officers at the scene, either by handing it to them or leaving it in the patrol car. (NT 389). One witness testified that Weitkamp occasionally waited along the route from the towing scene to the police station to make payments, and that officers sometimes went to his service station to receive them. (NT 286). Weitkamp claimed that these payments were made in gratitude for special assistance at towing scenes and not for the referral of business. Cross-examination of all the witnesses on this point, however, failed to establish any examples of such services with the single exception of an officer who had held the brake of appellant's truck on one occasion. All the witnesses testified that payments uniformly occurred in connection with or within a short period of time following an accident investigation or disabled vehicle call where Weitkamp's tow truck was summoned. Every witness called had connected the money he received with towing calls to Weitkamp, and appellant offers no other reasonable explanation for his actions. The circumstantial proof on this issue was strong indeed, and certainly sufficient to prove the knowing falsity of appellants' denial.

Eleven officers testified to receiving money from appellant Bortner. These payments were made while appellant was a supervisory officer in the York Police Department. They generally occurred while appellant and the witnesses were in uniform and within the confines of police headquarters in the York City Hall. The payments were handed to the witnesses in cash, generally without any explanation. All the officers testified, however, that there was no official reason for appellant to be distributing these sums, that he owed them no personal debts and that the payments invariably occurred within a short time after Weitkamp's tow truck had been called into use by them. One witness stated that appellant, when questioned about a payment, had replied that it was for an accident investigation where Weitkamp was called to the scene. (NT 245). Remarks by appellant of the same nature were recalled by several other officers. (NT 271, 288, 321). The evidence by the Commonwealth was ample to establish, beyond a reasonable doubt, both the nature of the payments and the knowing falsity of appellant Bortner's testimony.

Appellants contend that the lower court erred in determining that their perjurious statements were material and in deciding that issue as a matter of law rather than submitting it to the jury. It is clear that the materiality of the accused's statement is a requisite element of the crime of perjury. 18 Pa.C.S. § 4902(a); *Commonwealth v. Russo, supra.* 18 Pa.C.S. § 4902(b) provides as follows:

Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a matter of law.

Thus the terms of the statute itself puncture any argument that the trial court should have allowed the question of materiality to go to the fact-finder.

Appellants maintain that their statements were not material because before they testified the prior testimony of

other witnesses at Crime Commission hearings had already established the existence of a kickback scheme between some members of the York Police Department and certain towing operators. Since the Commission was already convinced that a payoff arrangement had existed, the argument continues, whether appellants lied or not could have had no effect on the outcome of the proceedings. In a slight twist of the same premise, appellant Bortner asserts that because the hearing officer indicated, before appellant's testimony, that a "substantial case" had already been made out against him, his denial of involvement could not have affected the findings or actions of the Commission.

 We find appellants' interpretation of materiality to be extremely narrow and unrealistic. Regardless of what information had been gleaned from prior witnesses, the testimony of the police chief and one of the towing operators allegedly involved could scarcely be deemed unimportant to the Commission's ultimate findings and recommendations. The statements of such individuals could certainly help to illuminate the scope and seriousness of the problem. Further, appellants' denials directly contradicted the testimony of numerous witnesses who had previously appeared, thus tending to affect the credibility of those persons and to complicate the task of the Commission.

Testimony may be material, and properly assigned for perjury, either where it tends to directly prove or disprove one side or the other in the main issue, or where under the established rules of evidence it indirectly tends to do so by crediting or discrediting other evidence or the testimony of another witness. *Commonwealth v. Rogo*, 71 Pa.Super. 109, 112 (1919).

Appellants also advance the theory that "exculpatory no's", such as their denials in this case, cannot be the basis of a perjury prosecution. They cite *United States v. Bush*, 503 F.2d 813 (5th Cir. 1974), and *Paternostro v. United States*, 311 F.2d 298 (5th Cir. 1962), as support for this proposition. These cases involved 18 U.S.C. § 1001, a statute criminalizing false statements made in matters within the jurisdiction

of federal departments and agencies. In *Bush* and *Paternostro*, the defendants had made exculpatory denials in response to questions from Internal Revenue Service agents investigating tax frauds. In both instances the court decided that 18 U.S.C. § 1001 was violated only where false statements relating to claims against the government were made, and that the statute did not cover responses initiated by government questions. These cases interpret a federal statute which defines a crime distinct from perjury, *see United States v. Chevoor*, 526 F.2d 178 (1st Cir. 1975), and are completely inapposite to the instant situation.

The trial court did not err in deciding the issue of materiality. We have reviewed all of appellants' contentions on this point and they are without merit.

The final argument appellants hold in common is that the lower court acted improperly in sentencing them without ordering pre-sentence reports and in failing to act on their petitions for reconsideration of sentence. Appellants rely on *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976), to buttress their contention that pre-sentence reports were required in this case. *Commonwealth v. Martin* was handed down on January 29, 1976, one day prior to the sentencing of appellants. In *Martin*, our supreme court requested that the Criminal Procedural Rules Committee prepare a recommendation for the amendment of Pa.R.Crim.P. 1403 to require that, in certain situations, the sentencing court either order a presentence report or place in the record its reasons for not so doing. The enumerated circumstances are: "1) where incarceration for one year or more is a possible disposition; 2) where the defendant is less than twenty-one years old; and 3) where the defendant is a first offender." *Commonwealth v. Martin, supra*, 466 Pa. at 135, 351 A.2d at 659.

Appellants were both first offenders and both were sentenced to one year of imprisonment. The lower court's opinion was written prior to sentencing, and no further explanation of the court's actions appears of record. It is contended that on these facts *Martin* requires us to remand to the lower court so that pre-sentence reports may be

ordered and appellants resentenced. We do not read *Martin*
as requiring pre-sentence reports or reasons of record to
explain their absence in all cases prior to the amendment of
Rule 1403. Application of such a broad interpretation would
be particularly inappropriate in this case, where sentencing
took place one day after *Martin* was decided and the sen-
tencing court thus had virtually no opportunity to apprise
itself of the decision. We will hence evaluate the sentencing
procedure herein to determine whether the sentencing court
had adequate information concerning the two factors which
*Martin* indicates are crucial to an individualized sentencing
determination—"the particular circumstances of the offense
and the character of the defendant." 466 Pa. at 133, 351
A.2d at 658.

The particular circumstances of the offenses in this case,
instances of perjurious testimony, were well established at
trial. In order to establish the falsity of the statements, the
Commonwealth was also required to prove that both appel-
lants had made payments for towing referrals. Extensive
testimony by numerous witnesses was introduced as to the
incidence of such payments and the facts surrounding them.
The character of the defendants was likewise a topic well
developed during the course of the proceedings. Six or more
witnesses testified to each defendant's good character and
fine reputation in the community. Witnesses for Bortner
told of the laudable nature of his career in the police force,
while others who testified for Weitkamp told of his out-
standing service and dependability as a towing operator.
Each defendant took the stand and testified to his own
background and personal circumstances.

At no point, during or following trial or in the instant
appeal, has it been suggested that medical or psychiatric
evaluation would be necessary for proper sentencing deci-
sions in this case. The facts surrounding the offenses, a
great deal of information regarding the defendants' charac-
ters and the important details of the defendants' personal
backgrounds all were elicited during trial. *Neither appellant
has made reference in this appeal to any significant factors*

*or considerations which were not developed at trial and which presumably would have appeared in a pre-sentence report.*

We find that the information at the trial court's disposal was adequate for the proper exercise of its sentencing discretion under *Martin*. Appellants do not contend that their sentences were illegal or constituted an abuse of discretion by imposing too severe a punishment.

There remain several issues raised by appellant Weitkamp alone. Appellant first asserts that during cross-examination the prosecutor violated his right to remain silent by posing certain questions in regard to his prior testimony. Our review of this issue is truncated. The questions which appellant claims violated his fifth amendment rights were not objected to at trial. They are thus waived and will receive no consideration on appeal. *Commonwealth v. Stoltzfus, supra.*

Secondly, appellant Weitkamp maintains that the court below erred in denying his request to make an opening statement at the beginning of the trial.

Pa.R.Crim.P. 1116(a) provides as follows:

After the jury has been sworn, the attorney for the Commonwealth shall make an opening statement to the jury. The defendant or his attorney may then make an opening statement or reserve it until after the Commonwealth has presented its case.

Counsel for appellant Bortner had stated his preference to reserve his opening address until the close of the Commonwealth's evidence. The court ruled that defense counsel could open either before or after the prosecution's case, but that both counsel had to open at the same point in the proceedings. Counsel for Weitkamp objected, and both defense attorneys opened after the Commonwealth's presentation.

The Supreme Court of Pennsylvania confronted the same issue on virtually identical facts in *Commonwealth v. Weeden*, 457 Pa. 436, 322 A.2d 343 (1974), and found no

reversible error. In the instant case, we likewise discern no basis for appellate relief.

Another alleged error is the lower court's denial of appellant Weitkamp's motion to have the district attorney's closing argument recorded. Defense counsel did not make his request until after his own unrecorded closing, and the trial court refused it as untimely. The court went on, however, to instruct defense counsel to voice immediate objection to anything he thought improper so that [the court] could get it on the record. Three remarks from the district attorney's closing are complained of: (1) a comment that the jury was only "seeing the tip of the iceberg" in the evidence that had been presented; (2) a reference to "the general mess in York"; and (3) a suggestion that "the people whose cars were towed away made the payments", i. e., that the cost of kickbacks was passed on to towing customers. As to the last remark, the court instructed the jury that there was no evidence that the cost of payments was passed on to customers and that the jury should disregard that suggestion. Defense counsel expressed his satisfaction with this instruction and cannot raise it as error on appeal. *Commonwealth v. Brown*, 234 Pa.Super. 119, 338 A.2d 659 (1975).

A side bar discussion ensued following defense counsel's objection to the district attorney's "tip of the iceberg" remark. The court instructed the district attorney to make no further argument in that direction. During this same conference, defense counsel requested that "there be no *further* references to the general mess in York." (NT 546). The court directed the prosecutor to comply. Defense counsel did not request curative instructions on either point, nor did he at any time move for a mistrial.

Under these circumstances, we find that the trial court granted all the relief that was requested, and appellant is not entitled to a new trial on this ground. *See Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976); *Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974).

The final issue presented in this appeal is whether the court below erred in refusing appellant Weitkamp's motion to dismiss under Pa.R.Crim.P. 1100. A criminal complaint charging appellant with perjury was filed on December 18, 1973. Appellant was given a preliminary hearing before a district justice on January 29, 1974. At that time three witnesses for the Commonwealth, York police officers who had testified in Crime Commission hearings, asserted their fifth amendment privilege and declined to answer questions regarding their knowledge of and involvement in the payment of towing kickbacks in York. The Commonwealth was thus able to produce no evidence and the complaint was dismissed.

On October 15, 1974, a new complaint charging perjury on the same facts was lodged against appellant. Another preliminary hearing was held on November 1, 1974, before the same district justice who had dismissed the first charge, and a prima facie case was established. Appellant was subsequently indicted by the Dauphin County Grand Jury and was brought to trial on January 14, 1975. Appellant contends that the 270 day period during which the Commonwealth had to try him under Pa.R.Crim.P. 1100(a)(1) must be measured from the filing of the initial complaint. If this assertion is correct, appellant's motion to dismiss under Rule 1100 filed January 6, 1975, should have been granted and appellant should now be discharged.

It is well-established that a magistrate's finding that the Commonwealth has not established a prima facie case is not a final determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest. *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205 (1975). This court was presented with a situation analogous to the instant case in *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976). The first complaint against Mumich was dismissed at the preliminary arraignment because the signature of the prosecutrix-affiant did not appear on Mumich's copy of the complaint. A second complaint was filed approximately a

month later and the appellant was eventually tried and found guilty. A pretrial motion to dismiss under Rule 1100 had been denied, and the question presented on appeal was whether the period for trial under the Rule ran from the filing of the first or second complaint. The court relied on two principal factors in deciding that the Rule 1100 span was measured from the second complaint: (1) the failure of the defendant or his attorney to object to the dismissal of the complaint because of the defect was interpreted as an acquiescence in the procedure followed by the magistrate; and (2) the record did not reflect any deliberate attempt by the district attorney's office to avoid the mandate of the Rule.

In this case appellant makes no claim that he objected to the dismissal of the first complaint against him. Further, the record reflects no intent by the Commonwealth to deprive appellant of his right to a speedy trial or to otherwise secure advantage or prejudice appellant's defense by trying him at a later time. The first complaint was dismissed when the Commonwealth's witnesses declined to testify, and a second complaint was brought when the Commonwealth was able to produce the necessary evidence.[12]

Appellant was tried within the prescribed period following the filing of the second complaint against him, and his petition to dismiss under Rule 1100 was therefore properly denied.

12. The instant case is thus clearly distinguishable from *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976). There our supreme court rejected the Commonwealth's contention that the entry of a nolle prosequi on the motion of the district attorney tolled the running of the prescribed period absent a violation of the accused's right to a speedy trial and so long as the relevant statutes of limitations had not expired. In *Whitaker* the nolle prosequi was obtained 268 days into the running of the 270 day period. This was a blatant attempt to avoid the mandate of Pa.R.Crim.P. 1100 by securing additional time in which to try the defendant without meeting the requirements for an extension of time under the Rule. No such design on the part of the Commonwealth appears from the record in this case.

We have reviewed all of appellants' claims and have found them to be without merit. The judgments of sentence are affirmed.

SPAETH, J., joins the majority opinion except as to the Rule 1100 issue, as to which he notes his dissent based on his dissenting opinion in *Commonwealth v. Braithwaite*, 253 Pa.Super. 447, 385 A.2d 423 (1978). *See Commonwealth v. Earp*, 476 Pa. 369, 382 A.2d 1215 (1978).

WATKINS, former President Judge, did not participate in the consideration or decision of this case.